UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**Case No. 12-4450**

JARED WOLFE

*Appellee*

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

*Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
No. 4:10-cv-0800

**BRIEF OF APPELLANT**
**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY**

Marshall J. Walthew
Sara B. Richman
John L. Schweder, II
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000
*Attorneys for Appellant Allstate*
*Property and Casualty Insurance Co.*

Dated: April 19, 2013

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and
Statement of Financial Interest**

No. 12-4450

Jared Wolfe

v.

Allstate Property and Casualty Insurance Company

Instructions

      Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

      Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest.  This information need be provided only if a party has something to report under that section of the LAR.

      In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings.  If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list.  LAR 26.1(c).

      The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

      The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first.  A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed.  Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

      If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Allstate Property & Casualty Ins. Co. makes the following disclosure:

(Name of Party)

    1) For non-governmental corporate parties please list all parent corporations:

Allstate Property and Casualty Insurance Company is a wholly-owned subsidiary of the Allstate Corporation.

    2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

No publicly held company owns 10% or more of the Allstate Corporation's stock.

    3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

N/A

    4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

N/A

/s/ Sara B. Richman

(Signature of Counsel or Party)

Dated: 12/14/2012

(Page 2 of 2)

*rev: 11/2008*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................... 2

STATEMENT OF THE CASE ................................................................ 2

STATEMENT OF FACTS ...................................................................... 4

STANDARD OF REVIEW .................................................................... 9

SUMMARY OF ARGUMENT .................................................................. 9

ARGUMENT .......................................................................................... 12

I.    As A Matter Of Law Allstate Had No Duty To Protect Its
      Insured  From A Punitive Damage Award .......................................... 12

      A.    Under The Terms Of Its Contract and Pennsylvania Law,
            Allstate  Had Complete Discretion To Litigate Rather
            Than Settle Wolfe's  Claim Against Zierle. ........................... 12

      B.    Allstate Had No Legal Duty To Protect Zierle From An
            Award Of Punitive Damages. .................................................. 14

            1.    Pennsylvania's Strong Public Policy Against
                  Insuring Punitive  Damages Precludes A Finding
                  Of Bad Faith In This Case. ........................................15

            2.    Courts Faced With The Precise Issue In This Case
                  Have Held  That There Can Be No Bad Faith As A
                  Matter Of Law. ............................................................17

            3.    It was reasonable for Allstate to rely on the case
                  law and public policy when deciding not to include
                  a potential punitive award as part of compensatory
                  damages. .......................................................................22

II.   The District Court Erred By Permitting The Jury To Hear
      About Wolfe's  Punitive Damage Award Against Zierle. ................. 24

III.    The District Court Erred As A matter Of Law In Holding That Wolfe Had Standing To Assert Zierle's Statutory Bad Faith Claim. ................................................................................................. 27

CONCLUSION ........................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3039 B Street Assocs. v. Lexington Ins., Co.*,
  444 Fed. Appx. 610 (3d Cir. 2011)........................................................9

*Amica Mut. Ins. Co. v. Fogel*, No. 09- 674,
  2010 U.S. Dist. LEXIS 89522 (M.D. Pa. June 7, 2010)....................23

*Ash v. Continental Ins. Co.*, 932 A.2d 877 (Pa. 2007)...........................28

*Aumen v. Nationwide Mut. Ins. Co.*, No. 10-597,
  2011 U.S. Dist. LEXIS 31360 (M.D. Pa. Mar. 8, 2011) ...................23

*Babcock & Wilcox Co. v. Am Nuclear Insurers,* 2009 Pa. Dist. & Cnty.
  LEXIS 151 (Allegheny C.C.P. Dec. 1, 2009).............................10, 13

*Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580
  (E.D. Pa. 1999)......................................................................................23

*Brown v. Candelora*, 708 A.2d 104 (Pa. Super. Ct. 1998) ...............28, 29

*Brown v. Progressive Ins. Co.*, 860 A.2d 493 (Pa. Super. Ct. 2004) .....22

*Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1995) .................16

*Coleman v. Home Depot, Inc.*, 306 F. 3d 1333 (3d Cir. 2002)...............26

*Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223 (Pa. 1957)...............14

*Creed v. Allstate Ins. Co.*, 529 A.2d 10 (Pa. Super. Ct. 1987) .............15

*Employers Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478
  (W.D. Pa. 2007) ....................................................................................23

*Esmond v. Liscio*, 224 A.2d 793 (Pa. Super. Ct. 1966) ..............10, 15, 27

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ...............................21

*Feingold v. Liberty Mut. Group*, Civ. A. No. 11-5364,
  2012 U.S. Dist. LEXIS 25273 (E.D. Pa. Feb. 28, 2012) .............28, 29

## CASES

*Feingold v. Liberty Mut. Group*, Civ. A. No. 1105364,
2012 U.S. Dist. LEXIS 96696 (E.D. Pa. Feb. 28, 2012) ............................12, 13

*Feingold v. State Farm Mut. Auto Ins. Co.*, Civ. A. No. 11-6309,
2012 U.S. Dist. LEXIS 46696 (E.D. Pa. Apr. 3, 2012) ....................................28

*Gedeon v. State Farm Mut. Ins. Co.*, 188 A.2d 320 (Pa. 1963)..............................25

*Griffin v. De Lage Landen Fin. Servs.*, No. 04-5352,
2005 U.S. Dist. LEXIS 31121 (E.D. Pa. Dec. 5, 2005) ....................................25

*J.H. France Refractories Co. v. Allstate Ins. Co.*,
626 A.2d 502 (Pa. 1993) .............................................................................23

*Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353
(E.D. Pa. 1997) .............................................................................................23

*Lawson v. Fortis Ins. Co.*, 146 F. Supp. 2d 737 (E.D. Pa. 2001) ...........................23

*Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996) ...............................*passim*

*March v. Western N.Y. and Pa. Ry. Co.*, 53 A. 1001 (Pa. 1903)............................27

*Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. 01-2394,
2003 U.S. Dist. LEXIS 2052 (E.D. Pa. Feb. 4, 2003) .....................................16

*PPG Indus. Ins. v. Transamerica Ins. Co.*,
975 P.2d 652 (Cal. 1994) ...............................................................11, 17, 21, 24

*Reppert v. Marino*, 259 Fed. Appx. 481 (3d Cir. 2007) ...........................................9

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ............................................................................9

*Segall v. Liberty Mut. Ins. Co.*, No. 99-6400,
2000 U.S. Dist. LEXIS 16382 (E.D. Pa. Nov. 9, 2000) ...................................23

*Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680
(Pa. Super. Ct. 1994)..............................................................................11, 22

*TIG Ins. Co. v. Nobel Learning Cmtys., Inc.*, No. 01-4708,
2002 U.S. Dist. LEXIS 10870, (E.D. Pa. June 18, 2002)................................16

Page(s)

CASES

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007) ...........................................15

*Tugboat Indian Co. v. A/S Ivarans Rederi*, 5 A.2d 153 (Pa. 1939) ........................27

*W.V. Realty Inc. v. Northern Ins. Co.*, 334 F.3d 306 (3d Cir. 2003) ......................24

*Zieman Mfg. Co. v. St. Paul Fire and Marine Ins. Co.*
    724 F.2d 1343 (9th Cir. 1983) ...................................................................*passim*

STATUTES

73 P.S. § 201.1 et seq. .................................................................................................3

73 P.S. § 201-9.2 ........................................................................................................25

28 U.S.C. § 1291 ...........................................................................................................1

28 U.S.C. §1332 .............................................................................................................1

28 U.S.C. §1441(b) .....................................................................................................1, 3

42 Pa. C.S.A. § 8371 ............................................................................................*passim*

OTHER AUTHORITIES

Allan D. Windt, <u>Insurance Claims and Disputes</u> §§ 5:1 & 5:11
    (5th ed. 2007) ........................................................................................................20

Fed. R. Civ. P. 12(b)(1)........................................................................................4, 9, 28

Fed. R. Evid. 401 ..................................................................................................11, 24

Fed. R. Evid. 402 ......................................................................................................11

Fed. R. Evid. 403 ..................................................................................................11, 25

Federal Rule of Appellate Procedure 4 ........................................................................1

Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance</u> § 206:55
    (3d ed. 2005) ........................................................................................................20

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter under 28 U.S.C. §1332 because the case was between citizens of different states and the amount in controversy was greater than $75,000; and the case was timely removed to the district court under 28 U.S.C. §1441(b) by Allstate Property and Casualty Company ("Allstate"). Plaintiff Jared Wolfe ("Wolfe") was a citizen of Pennsylvania and Allstate was a citizen of Illinois because it is incorporated in Illinois and has its principal place of business in Illinois. The district court, however, did not have jurisdiction over plaintiff's statutory bad faith and Unfair Trade Practice and Consumer Protection Law claims, because Wolfe, as an assignee of Karl Zierle ("Zierle"), lacked standing to bring such claims.

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4 because Allstate timely filed a notice of appeal within 30 days after entry of final judgment on the jury verdict in this case. The district court entered final judgment in the matter on November 8, 2012, and Allstate filed its notice of appeal on December 5, 2012. The district court's entry of judgment disposed of all claims between the parties.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred as a matter of law by allowing plaintiff's bad faith claims to go to trial when Allstate had no legal duty to protect plaintiff against a punitive damage award?

2.      Whether the district court erred as a matter of law by permitting plaintiff/appellee Jared Wolfe to introduce evidence at the trial of this matter of the punitive damage award in his favor from an underlying lawsuit against Karl Zierle?

3.      Whether the district court erred as a matter of law by holding that Jared Wolfe had standing to bring a claim under 42 Pa. C.S.A. § 8371 when Wolfe's claim was based on an impermissible assignment of the rights of Karl Zierle?

## STATEMENT OF THE CASE

This case arises out of a lawsuit between Wolfe and Zierle ("Wolfe v. Zierle").  Wolfe brought claims against Zierle for injuries Wolfe allegedly sustained in an automobile accident with Zierle.  After a trial, the jury awarded Wolfe $15,000 in compensatory damages and $50,000 in punitive damages.  Zierle's insurer, Allstate, paid the $15,000 in compensatory damages but declined to pay the $50,000 punitive award because Pennsylvania law, and the relevant policy, prohibit insurers from paying punitive damages.  In return for Wolfe's

agreement not to seek to collect the punitive damage judgment from him, Zierle assigned whatever rights he had against Allstate to Wolfe.

On the basis of the purported assignment of rights, Wolfe sued Allstate in the Pennsylvania Court of Common Pleas for Lycoming County alleging breach of contract, breach of Pennsylvania's insurance bad faith statute (42 Pa. C.S.A. § 8371) and breach of Pennsylvania's Uniform Trade Practices and Consumer Protection Law ("UTPCPL") (73 P.S. § 201.1 et seq.). Allstate timely removed the case to the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. §1441(b) on the basis of diversity of citizenship.

Allstate filed a motion for summary judgment as a matter of law. Magistrate Judge Methvin denied the summary judgment motion. Appendix ("App.") at A30-A58. Allstate sought reconsideration of the Magistrate Judge's Report and Recommendation and Judge Jones, on appeal of the magistrate Judge's Report and Recommendation, adopted the Magistrate Judge's position in its entirety. Ap. at A22-A29.

Prior to trial, Allstate filed a motion in limine seeking to preclude Wolfe from introducing evidence of the punitive award at trial on the grounds that the punitive award was irrelevant and unduly prejudicial to Allstate. The Court denied Allstate's motion in limine, and evidence of the $50,000 punitive award was repeatedly introduced at trial. App. at A5-A13. Additionally, Allstate filed a

-3-

motion under Fed. R. Civ. P. 12 (b)(1) to dismiss Wolfe's statutory bad faith and UTPCPL claims on the ground that such claims are not assignable, and, therefore, that Wolfe lacked standing to bring them. The court denied that motion. App. at A14-A21.

The case proceeded to trial on November 5, 2012. The jury returned a verdict in favor of Allstate on the UTPCPL claim on November 7, 2012. The jury found in favor of Wolfe on the contract claim but awarded no damages.[1] The jury also found that Allstate was liable on the statutory bad faith count and awarded $50,000 in punitive damages. The Court entered judgment on the verdict on November 8, 2012. Allstate filed a notice of appeal on December 5, 2012. App. at A1-A4.

On November 16, 2012, Wolfe filed a motion seeking costs and attorneys' fees under 42 Pa. C.S.A. § 8371. That motion is pending and is not the subject of this appeal.

## STATEMENT OF FACTS

During the early morning hours of March 2, 2007, Zierle consumed 15 or 16 beers. App. at A111. After sleeping briefly, Zierle gathered his coin collection and drove to have it appraised. App. at A106. At approximately 11:00

---

[1]     Because damages are an element of a breach of contract claim, the jury's finding of liability was technically inconsistent with the trial court's instruction and therefore erroneous. App. at A178-A179. As a practical matter, however, because the jury awarded no damages on this contract count, the issue is moot. This appeal relates solely to the statutory bad faith claims.

a.m. Zierle rear-ended Wolfe.  <u>Id.</u>  Blood alcohol testing revealed that after the accident, Zierle's blood alcohol level was .25%.  App. at A396.  At the time of the accident, Zierle had three prior DUI convictions and had driven while intoxicated numerous times without getting caught.  App. at A505-A506; A651.  On June 25, 2007, Zierle pled guilty to driving under the influence of alcohol.  <u>Id.</u>

At the time of the accident, Zierle was insured by Allstate.  App. at A159; A346-A390.  The terms of the policy required Allstate to defend Zierle in suits by third parties arising out of automobile accidents.  App. at 362.  The policy further required Allstate to indemnify Zierle for damages for bodily injury arising out of automobile accidents up to the policy limit of $50,000.  App. at A352-353; A362.  The policy, however, stated that Allstate would "not defend an insured person sued for damages which are not covered by this policy."  App. at A362.  Significantly the policy gave Allstate the right but not the obligation, in its sole discretion to "settle any claim or suit if [Allstate] believe[s] it is proper."  <u>Id.</u>

Despite suffering minimal injuries, Wolfe retained attorney Michael Dinges ("Dinges") to present a claim against Zierle on his behalf.  Dinges wrote to Allstate demanding that Allstate pay $25,000 to settle the claim.  App. at A404-A468.  Dinges supported his monetary demand by providing medical records and describing Wolfe's alleged damages and injuries.  App. at A404-A407.  Despite

the $25,000 demand, Dinges actually believed that the true value of the claim was in the range of $5,000 - $7,500. App. at A80; A117.

Allstate adjuster, Kevin Broadhead ("Broadhead"), fully reviewed the demand package, including medical records and other documentation provided by Dinges, and evaluated the claim. App. at A138-A140. The medical records revealed the following information:

1. Wolfe was taken to the emergency room after the accident and discharged with a prescription for pain medication. App. at A405.

2. Wolfe had two follow up visits with his family physician. Id.

3. Wolfe had a pattern of cervical and shoulder problems going back to 2004 and underwent surgery in February 2006 to repair a problem at the C-6 disc. App. at A460; A451-A452.

4. Wolfe saw a neurosurgeon in July, 2007 who prescribed no treatment, and who did not restrict him from working. App. at A403.

5. An MRI performed in May 2007 revealed a small bulge at the C5-C6 level that had been previously identified in pre-accident MRI's. Compare App. at A344 & A345 with A402.

6. No doctor ever restricted Wolfe from working.

Beyond his alleged medical injuries, Wolfe claimed that he lost two months of work as a self-employed contractor. App. at A406. There was no documentation to support the lost wage claim, and Wolfe later admitted at trial that he never turned down any work and was fully able to perform his job duties during

the period for which he claimed lost wages. App. at A87-A88; A100.[2] Wolfe also informed Allstate of certain medical bills he had incurred, but as required by law, his own insurer paid those bills. App. at A86.

Based on the minimal medical treatment, the lack of out of pocket losses, and the pre-existing injury, Broadhead evaluated Wolfe's claim as having a value of $1,200 – $1,400. App. at A100, A140. Broadhead offered $1,200 to settle the claims. Despite the fact that Allstate's offer was closer to Dinges' true valuation of the case than it was to his $25,000 demand, Dinges rejected Allstate's offer and did not make a counter-demand. App. at A100; A147.

Rather than make a counter-demand, Dinges filed suit against Zierle. App. at A477-A484. Allstate appointed Gary Weber, Esq. to represent Zierle. App. at A485. The lawsuit did not include a count for punitive damages, although Dinges was well aware of Zierle's blood alcohol content at the time he filed suit. App. at A405. When the filing of the lawsuit did not generate an increased offer from Allstate, Dinges attempted to pressure Allstate to unilaterally increase its offer by amending the complaint to add a count for punitive damages. App. at A489-A492. After discovery, in December 2008, Dinges reiterated his $25,000 demand. App. at A488. At no point did Dinges ever expressly communicate a

---

[2]    Despite having admitted in the underlying trial that he had not lost any wages or been unable to work, he testified under oath in this case that he had been unable to work and had lost wages. App. at A83. Confronted with his prior trial testimony, Wolfe conceded that he had testified truthfully in the underlying case that he had been able to work and had not turned down any work. App. at A87-A88.

demand lower than $25,000 to Weber or Broadhead. App. at A989-A99; A311; A147.

As the case proceeded toward trial, Allstate kept Zierle informed of the fact that it would not pay any punitive award and advised him of his right to hire personal counsel to represent him with respect to the punitive claims. App. at A112-A113. As the case neared trial, Broadhead called Dinges to discuss the possibility of settlement. App. at A113; A304; A147. Dinges did not return the call. App. at A113.

The case proceeded to trial on September 28, 2009. On September 29, 2009, the jury returned a verdict of $15,000 in compensatory damages and $50,000 in punitive damages against Zierle. App. at A514-A516. Allstate paid the compensatory award, but did not pay the punitive award. App. at A85. Allstate authorized Weber to file a post-trial motion on Zierle's behalf seeking to strike or reduce the punitive damages. App. at A517-A522. The Court denied that motion. App. at A524-A525.

Zierle retained personal counsel to represent him with respect to the $50,000 punitive verdict. App. at A113. Zierle's counsel negotiated an agreement with Wolfe whereby Wolfe took an assignment of Zierle's rights against Allstate in return for an agreement not to seek recovery of the punitive damages from Zierle

personally.  App. at A113-A114.  As a result, Zierle emerged from the trial process without paying a penny of the $65,000 in judgments against him.  App. at A114.

## STANDARD OF REVIEW

This Court reviews decisions regarding summary judgment *de novo* and applies the same standard as the district court.  <u>See</u> <u>3039 B Street Assocs. v. Lexington Ins., Co.</u>, 444 Fed. Appx. 610, 611-12 (3d Cir. 2011).  Similarly, this Court exercises plenary review over a district court's ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1).  <u>See</u> <u>In re Schering-Plough Corp. Intron/Temodar Consumer Class Action</u>, 678 F.3d 235, 243 (3d Cir. 2012) (motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1)).

Generally, this Court reviews evidentiary decisions of the district court for abuse of discretion; however, to the extent that the challenge involves a legal inquiry, this Court's review is plenary.  <u>See</u> <u>Reppert v. Marino</u>, 259 Fed. Appx. 481, 486 (3d Cir. 2007).  Here, the district court erred when it admitted evidence of the punitive award because, as a matter of law, an insurer has no duty to settle a claim merely because the insured risked a punitive damage award not covered by the policy.

## SUMMARY OF ARGUMENT

Pennsylvania has a strong and unequivocal policy precluding insurers from paying punitive damage awards, the purpose of which is to ensure that those

guilty of reprehensible conduct personally pay for their misconduct.  See Esmond

v. Liscio, 224 A.2d 793, 799 (Pa. Super. Ct. 1966).  Accordingly, the Allstate

policy at issue in this case was limited to bodily injury damages and did not cover

punitive damages.  Additionally, in return for providing a defense and indemnity to

its insured for the covered damages, the Allstate policy reserved to Allstate the sole

right to settle or litigate claims brought against its insureds.  App. at A362.  The

Pennsylvania courts have long recognized that if an insurer litigates a case and

achieves a verdict within the policy limits, it has acted properly and there can be no

claim of bad faith.  See, e.g., Babcock & Wilcox Co. v. Am Nuclear Insurers, 2009

Pa. Dist. & Cnty. LEXIS 151 (Allegheny C.C.P. Dec. 1, 2009).

      The interaction of Pennsylvania's policy against insuring punitive

damages and the right of an insurer to control litigation makes it clear, as a matter

of law, that Allstate had no duty in this case to consider the possible effect of a

punitive damage award on Mr. Zierle in deciding whether to settle or try the Wolfe

v. Zierle matter.  Cases that have considered the exact scenario at issue here have

concluded that there can be no bad faith where an insurer tries a case and achieves

a compensatory verdict within the policy limits – even if the insured suffers a

substantial, uncovered punitive award because of the insurer's actions.  See

Zieman Mfg. Co. v. St. Paul Fire and Marine Ins. Co., 724 F.2d 1343 (9th Cir.

1983) (insurer "had absolutely no duty to settle the claim merely because [the

insured] risked a punitive damage award" that was not covered by the policy) (emphasis added); <u>PPG Indus. Ins. v. Transamerica Ins. Co.</u>, 975 P.2d 652 (Cal. 1994); <u>Lira v. Shelter Ins. Co.</u>, 913 P.2d 514, 517 (Colo. 1996). These decisions are completely consistent with Pennsylvania law and the trial court erred by not predicting that Pennsylvania would adopt the rationale of these cases. In any case, the existence of this clear line of cases supporting its actions made Allstate's conduct reasonable as a matter of law, thus precluding any bad faith liability under 42 Pa. C.S.A. § 8371. <u>See</u> <u>Terletsky v. Prudential Prop. & Cas. Ins. Co.</u>, 649 A.2d 680 (Pa. Super. Ct. 1994) (insurer entitled to judgment as a matter of law for relying on a reasonable interpretation of unsettled case law).

Alternatively, the case should be reversed and remanded for a new trial because the district court erroneously admitted evidence of the $50,000 punitive award at trial. Because the bad faith claim framed by the court was whether Allstate acted reasonably in its negotiations regarding the <u>compensatory</u> claim alone, evidence of the punitive award was both irrelevant and unduly prejudicial. <u>See</u> Fed. R. Evid. 401, 402, 403.

Finally, the district court erred by denying Allstate's motion to dismiss the statutory bad faith claim because Wolfe lacked standing to sue. Because tort claims are not assignable under Pennsylvania law, Wolfe, as a

purported assignee of Karl Zierle, lacked standing to bring this claim.  See,

Feingold v. Liberty Mut. Group, Civ. A. No. 1105364, 2012 U.S. Dist. LEXIS

96696 (E.D. Pa. Feb. 28, 2012).

## ARGUMENT

I.      As A Matter Of Law Allstate Had No Duty To Protect Its Insured
        From A Punitive Damage Award.

        By denying Allstate's summary judgment motion and allowing the

jury to determine that Allstate acted in bad faith, the district court erred as a matter

of law.  The district court's decision ignored both Allstate's contractual right to

decide whether to settle or try a lawsuit brought against one of its insureds and

Pennsylvania's strong public policy prohibiting insurers from covering punitive

damages claims.  The district court's erroneous holding that Allstate had a duty to

try to settle a claim for compensatory damages against Karl Zierle is simply wrong

as a matter of law.  Accordingly, this Court should reverse the judgment in this

case and order that judgment in Allstate's favor be entered.

        A.      Under The Terms Of Its Contract and Pennsylvania Law, Allstate
                Had Complete Discretion To Litigate Rather Than Settle Wolfe's
                Claim Against Zierle.

        The Allstate policy that Zierle paid for plainly and unambiguously

reserved to Allstate the sole discretion whether to settle any claims for bodily

injury brought against Zierle.  App. at A362.  The power to control settlement of

claims is a key feature of all auto insurance policies.  The reason insurers retain the

right to try cases is because it is the insurer's money that is at stake. If the insurer

believes a settlement demand is exorbitant, it can protect itself by litigating the

claim. The fact that insurers retain the right to litigate functions to help control the

cost of claims and is an important factor in keeping the cost of auto insurance low.

If insurers had to settle every claim where the plaintiff offered to settle within the

policy limits, plaintiffs would have no reason to act responsibly in negotiations.

Pennsylvania law recognizes the validity of the insurer's right to

control the decisions whether to settle or not. Judge Wettick, one of

Pennsylvania's most respected jurists, has approved the validity of letting the

insurer whose money is at stake "negotiate with the other side and to try those

cases that may result in a defense verdict or a verdict less than the final demand."

Babcock & Wilcox Co. v. Am. Nuclear Insurers, 2009 Pa. Dist. & Cnty. LEXIS

151, at *22 (Allegheny C.C.P. Dec. 1, 2009). As Judge Wettick explained:

> Since there are no formulas for valuing personal injury
> claims, there is a wide range of decisions to accept or
> reject settlement demands that may meet a
> reasonableness standard. Furthermore negotiating tactics
> also come into play in determining whether conduct is
> reasonable.

Id. at *21.

Therefore, it is not surprising that there is no Pennsylvania case (other

than this one) holding that an insurer has acted in bad faith by deciding to try a

case against one of its insureds where, as here, the compensatory award was below

the policy limits and the insurer paid it.[3]  Thus, in this case, where the

compensatory verdict was less than both the policy limits and Wolfe's lowest

formal demand, the district court should have found that Allstate did not act in bad

faith as a matter of law.  Instead, it erroneously held that Allstate could be liable

for failing to negotiate the compensatory claim in good faith.  App. at A46-A47;

A25-A26.

B.    Allstate Had No Legal Duty To Protect Zierle From An Award Of
      Punitive Damages.

It is clear that Wolfe had no claim for bad faith based on Allstate's

handling of the compensatory damage claim against Zierle.  The more complicated

legal issue presented by this case was whether the possibility that trying the case

would expose Zierle to a punitive damages award imposed on Allstate a duty to

settle rather than try the case.  This precise issue has never been addressed by

Pennsylvania courts, but there are strong reasons for predicting that Pennsylvania

would adopt a rule holding that an insurer need not factor the potential for punitive

damage liability in deciding whether to settle or litigate a claim against an insured.

The reasons supporting the adoption of such a rule are: (1) that Pennsylvania has a

strong public policy of holding tortfeasors personally responsible for outrageous

---

[3]    In fact, even if the insurer guesses wrong and the insured suffers a verdict above the policy limit, the
       insurer's conduct can still be good faith under a common law breach of contract theory.  See Cowden v.
       Aetna Cas. & Sur. Co., 134 A.2d 223, 228 (Pa. 1957).  When the trial results in a verdict within the policy
       limits, the insurer's decision is reasonable per se.  The common law bad faith claim established in Cowden
       protects insureds against unreasonable insurer conduct in refusing to settle a compensatory claim.  Cowden,
       however, has never been extended to cover excess punitive awards.

conduct, and (2) that there is a consistent line of well-reasoned cases expressly

holding that an insurer cannot be found liable for bad faith for exposing an insured

to punitive liability by trying, rather than settling, a claim for compensatory

damages and achieving a verdict within the policy limits.[4]  The district court chose

not to address this issue, and instead pretended that there was a viable bad faith

claim based on Allstate's handling of the compensatory claim alone.

     1.     Pennsylvania's Strong Public Policy Against Insuring Punitive
               Damages Precludes A Finding Of Bad Faith In This Case.

Although Wolfe's precise theory – that Allstate had a duty to factor in

a potential punitive damage award when placing a settlement value on Wolfe's

bodily injury claim – appears to be one of first impression in Pennsylvania, it is not

presented to this Court in a vacuum.

Punitive damages are legally uninsurable as a matter of strong

Pennsylvania public policy.  See Esmond v. Liscio, 224 A.2d 793, 799 (Pa. Super.

Ct. 1966) ("public policy does not permit a tortfeasor…to shift the burden of

punitive damages to his insurer"); Creed v. Allstate Ins. Co., 529 A.2d 10, 12 (Pa.

---

[4]       The district court's zeal to preserve all of plaintiff's claims led it to other logical inconsistencies as well, particularly with respect to the UTPCPL claim.  In granting Allstate's motion to dismiss the UTPCPL claim, the district court correctly acknowledged that reliance by the plaintiff is a necessary element of a claim under the UTPCPL.  That decision is in keeping with Pennsylvania law.  See Toy v. Metro. Life Ins. Co., 928 A.2d 186, 202 (Pa. 2007).  Wolfe filed an amended complaint and the district court concluded that he had adequately pled reliance.  When Allstate filed a summary judgment motion on the ground that Zierle admitted he didn't rely on anything Allstate said or did, the court concluded that there was no reliance.  See App. at A54-A55.  Ignoring Toy and its own prior holding, the district court refused to grant summary judgment on this count and allowed the UTPCPL claim to be presented to the jury.  App. at A27. Fortunately, the jury mooted this inexplicable legal error by finding in Allstate's favor.

Super. Ct. 1987); Butterfield v. Giuntoli, 670 A.2d 646, 654 (Pa. Super. Ct. 1995)

("this Court has held that a claim for punitive damages against a tortfeasor who is

*personally* guilty of outrageous and wanton misconduct is excluded from coverage

as a matter of law"); Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc., No. 01-2394,

2003 U.S. Dist. LEXIS 2052, at *6 (E.D. Pa. Feb. 4, 2003). The reason is simple:

> Pennsylvania courts have reasoned that to permit
> insurance against the sanction of punitive damages would
> be to permit such offenders to purchase a freedom of
> misconduct altogether inconsistent with the theory of
> civil punishment that such damages represent.

TIG Ins. Co. v. Nobel Learning Cmtys., Inc., No. 01-4708, 2002 U.S. Dist. LEXIS

10870, *43-44 (E.D. Pa. June 18, 2002). If an insured could deflect responsibility

by insuring his bad acts, punitive damages would serve no purpose.

Where an insurer has no duty to indemnify an insured for punitive

damages the insurer cannot be required to consider the potential punitive damages

when valuing a compensatory claim. To hold otherwise would defeat public

policy, forcing an insurer to secretly compensate for punitive damages in the guise

of increased settlement payments when punitive damages are claimed.[5]

---

[5] Because Zierle did not – and could not – have insurance coverage for punitive damages, Allstate did not charge Zierle premiums for such coverage. If this Court were to conclude that Allstate should have factored in the risk of punitive damages when valuing Wolfe's claim for bodily injury benefits, Zierle would receive coverage for which he never paid. Such a ruling would increase claim payouts in the future. Insurers will no doubt charge increased insurance premiums to offset the costs that they will incur as they effectively provide coverage for punitive damages. In short, the end result of allowing Wolfe's theory will be to pass the costs of antisocial and dangerous driving behaviors to the law abiding public.

2.     Courts Faced With The Precise Issue In This Case Have Held
       That There Can Be No Bad Faith As A Matter Of Law.

Relying on the principle that tortfeasors should remain personally

liable for punitive damage, several jurisdictions have held that an insurer has no

obligation to consider the potential for a punitive award against its insured when

analyzing settlement of a covered compensatory claim.  Therefore, an insurer has

no duty to inflate its settlement offer to protect its insured from a potential punitive

award.  See Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co., 724 F.2d 1343,

1345 (9th Cir. 1983) (finding that insurer "had absolutely no duty to settle the

claim merely because [the insured] risked a punitive damage award" that was not

covered by his insurance policy and would not be indemnified by the insurer); Lira

v. Shelter Ins. Co., 913 P.2d 514, 517 (Colo. 1996); PPG Indus., Inc. v.

Transamerica Ins. Co., 975 P.2d 652 (Cal. 1994) ("[A]n insurer is not obligated to

indemnify against punitive damages. The same public policy which forbids an

insurer from paying punitive damages in a judgment should likewise bar its

payment of such damages, or some part thereof, in a settlement.") (citation

omitted).  Zieman and Lira are particularly instructive here.

In Zieman, the Ninth Circuit declared that "[the insurer] had no

absolute duty to settle the claim merely because [the insured] risked a punitive

damage award."  724 F.2d at 1345.  In Zieman, the plaintiff Stewart sued the

defendant Zieman in a products liability action.  St. Paul Fire & Marine Insurance

Company assumed Zieman's defense.  Id. at 1345.  During the course of the proceedings, Stewart amended his complaint to include a claim for punitive damages.  St. Paul notified Zieman of the punitive damage claim and further notified Zieman that such a claim was not covered by his insurance policy and was not insurable under California law.  Id.

Although Stewart sought $200,000 - $250,000 to settle his suit – an amount well within the $1 million policy limit – and Zieman offered to contribute $20,000 of his own funds to settlement, St. Paul, believing the proper value of the case was $100,000, rejected that figure and the case proceeded to trial.  Id.  The jury awarded $387,107 in compensatory damages and $30,000 in punitive damages.[6]  St. Paul paid the full compensatory award as well as the attorney's fees and defense costs.  Zieman sued St. Paul, alleging that St. Paul acted in bad faith when it opted not to settle the claim within the policy limits, thereby exposing Zieman to the uninsured punitive award.  Id.

The Ninth Circuit affirmed the District Court's holding that there was no bad faith.  As the District Court explained, and the Ninth Circuit adopted:

> **The proposition that an insurer must settle, at any figure demanded within the policy limits, an action in which punitive damages are sought i[s] nothing short of absurd.**  The practical effect of such a rule would be

---

[6]     By contrast, the difference between the jury award and Allstate's offer in this case was less than $14,000 - - not $287,000, as was the case in <u>Zieman</u>.

to pass on to the insurer the burden of punitive damages
in clear violation of California statutes and public policy.

Zieman, 724 F.2d at 1346 (emphasis added).

In reaching this conclusion, the Ninth Circuit distinguished this situation from one in which an insurer exposes its insured to a compensatory verdict in excess of the insurance policy limits. Id. The Zieman Court made a point, though, to highlight the reasonableness of the insurance company's settlement position, which never threatened to expose the insured to an excess compensatory verdict:

> [T]he policy limits in this case were never threatened under any view of what happened in the Stewart case. The ultimate demand was just under 50% of the limits and the jury verdict was less than 42%. The test of good faith settlement is whether a prudent insurer without policy limits would have accepted the settlement offer. St. Paul has demonstrated that its refusal to settle, first at $200,000 and later at $495,000, was prudent, and there is nothing in the record which would indicate that refusal in any way contemplated Zieman's punitive damage problem.

Id. at 1346.[7] Zieman is indistinguishable from this case.

The Supreme Court of Colorado has reached a similar conclusion.

See Lira v. Shelter Ins. Co., 913 P.2d 514 (Colo. 1996). Lira involved a drunk insured who got into a fight with another driver on a highway. The insured

---

[7] Wolfe's counsel conceded that there was no risk that the compensatory award in the underlying case would exceed $50,000. App. at A98.

abandoned his vehicle on the highway, causing another driver to hit it and suffer injuries. The injured driver sued the insured, seeking compensatory and punitive damages. Id. at 515. The plaintiff demanded the $50,000 policy limits; the insurer offered $10,000. The plaintiff rejected the settlement offer, and the case went to trial. The jury awarded $87,300 in compensatory damages and $87,300 in punitive damages, each of which the trial court reduced to $43,650. Id. at 516. The insurer paid the compensatory award.

The Lira Court held that an insured could not shift the burden of punitive damages to the insurer when such damages are not covered by insurance:

> To allow the petitioner in this case to recover compensatory damages which derive from his own wrongful conduct undercuts the public policy of this state against the insurability of punitive damages.
>
> ***
>
> To hold otherwise would, in practical application, force insurers to settle cases involving punitive damages in order to avoid liability for the same punitive damages in subsequent bad faith actions. Such a result would be contrary to the principle that insurers have no absolute duty to settle in order to protect their insureds from punitive judgments. See Zieman, 724 F.2d at 1346.

Id. at 518.[8]

---

[8]    This reasoning has also been adopted by some of the leading commentators on insurance law. See Allan D. Windt, Insurance Claims and Disputes §§ 5:1 & 5:11 (5th ed. 2007); Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 206:55 (3d ed. 2005).

The holdings of <u>Zieman</u> and <u>Lira</u> represent the logical extension of Pennsylvania's rule against insuring punitive damages. An insurer cannot rationally be held to have a duty to increase its settlement offer on a covered claim to protect its insured from a claim that is not covered, particularly a claim for punitive damages, the purpose of which is to punish the tortfeasor's bad acts. This Court should predict that Pennsylvania would adopt the reasoning of <u>Zieman</u> and <u>Lira</u> and hold that an insurer has no duty to consider a potential punitive damage award against its insured when making settlement decisions regarding a compensatory claim.

The reasons why the rule applied in <u>Zieman</u>, <u>Lira</u> and <u>PPG</u> makes sense is clearly exemplified in this case. Allowing Wolfe to sue Allstate for bad faith completely undermines Pennsylvania's strong prohibition against insuring punitive damages. Punitive damages are meant to punish people who behave in ways that are grossly offensive, and not to reward injured plaintiffs - - who are presumably fully compensated by non-punitive damages. <u>See</u> <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 492 (2008).

By allowing this case to proceed the district court completely subverted Pennsylvania public policy. A tortfeasor has escaped punishment for his odious conduct, while an underserving plaintiff has reaped a windfall. Zierle, a four time convicted drunk driver who caused an accident while driving with a

blood alcohol at a whopping .25% (3 times the legal limit) walked away from this case having paid nothing for his misconduct. Meanwhile Wolfe received a $50,000 windfall that will have no deterrent effect on Zierle.[9] Allstate, and ultimately the premium paying public, are left to fund this injustice. This Court can cure this injustice by reversing the trial court and ordering entry of judgment for Allstate on the bad faith claim.

     3.     It was reasonable for Allstate to rely on the case law and public policy when deciding not to include a potential punitive award as part of compensatory damages.

Even if the Court were to determine - - contrary to the clear trend in the existing law - - that, under Pennsylvania law, Allstate should have considered the potential punitive exposure of its insured when valuing the compensatory claim for settlement, Allstate still cannot be found to have acted in bad faith because it relied on a reasonable interpretation of the then existing case law. See Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 690 (Pa. Super. Ct. 1994) (reversing trial court verdict in favor of insured where insurer did not act in bad faith because, among other things, it relied on a reasonable interpretation of unsettled case law); Brown v. Progressive Ins. Co., 860 A.2d 493, 505 (Pa. Super. Ct. 2004) ("insurers should not be faulted for taking a reasonable legal position

---

[9]     In light of Wolfe's testimony that he was willing to settle his claim for as little as $5,000, the $15,000 compensatory verdict for his extremely minor injuries represented a substantial windfall, independent of the punitive award.

when the state of the law in a particular area is unclear or in flux").[10]  Here,

although Pennsylvania courts had not addressed the precise issue, there was a

substantial body of case law holding that an insurer had no duty to protect an

insured against an uninsurable claim for punitive damages.  Allstate had a

reasonable basis to believe that a Pennsylvania court would reach the same

conclusion as the other courts that had expressly addressed this issue.

Accordingly, Allstate was entitled to judgment as a matter of law on Wolfe's bad

faith claim.

      The reasonableness of Allstate's settlement negotiations is further

buttressed by the fact that there is case law holding that an insurer is not required

to bid against itself when an insured does not reduce his demand in response to the

insurer's offer.  See Segall v. Liberty Mut. Ins. Co., No. 99-6400, 2000 U.S. Dist.

LEXIS 16382 (E.D. Pa. Nov. 9, 2000).  There can be no bad faith when Allstate's

conduct was in line with existing case law.

---

[10]     See also, Bostick  v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) ("Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law.") (citing J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502, 510 (Pa. 1993)); Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 359 n.7 (E.D. Pa. 1997); Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007) ("[T]he presence or absence of bad faith does not turn on the legal correctness of the basis for an insurer's denial of an insured's claim."); Lawson v. Fortis Ins. Co., 146 F. Supp. 2d 737, 746 (E.D. Pa. 2001) ("Although [the insurer] erred in denying coverage, [the insurer] did not act in bad faith in doing so" because its interpretation of the applicable clause was reasonable.); Aumen v. Nationwide Mut. Ins. Co., No. 10-597, 2011 U.S. Dist. LEXIS 31360, *8 (M.D. Pa. Mar. 8, 2011) (where the insurer's interpretation of the law and contract was reasonable, there could be no finding of bad faith) adopted by 2011 U.S. Dist. LEXIS 31166 (M.D. Pa. March 24, 2011) (Jones, III, J.); Amica Mut. Ins. Co. v. Fogel, No. 09- 674, 2010 U.S. Dist. LEXIS 89522, *48 (M.D. Pa. June 7, 2010) (insurer did not act in bad faith where there "exist numerous judicial decisions that offer varying degrees of support for the positions taken by both parties") adopted by 2010 U.S. Dist. LEXIS 76744 (M.D. Pa. July 29, 2010) (Jones, III, J.); aff'd by 656 F.3d 167 (3d Cir. 2011).

II.     **The District Court Erred By Permitting The Jury To Hear About Wolfe's Punitive Damage Award Against Zierle.**

        Despite being directly confronted with the issue of whether

Pennsylvania would adopt the reasoning of <u>Zieman</u>, <u>Lira</u>, and <u>PPG</u> and hold that an

insurer does not act in bad faith as a matter of law if it exposes an insured to a

punitive damage award while trying a compensatory claim to judgment within the

policy limits, the district court did not address that issue.  Instead, the court

engaged in some logical legerdemain by holding that Wolfe could prove bad faith

by showing that Allstate acted in bad faith in the conduct of settlement negotiations

on the compensatory claim alone.  App. at A46-A47.

        Based on the district court's limitation of the bad faith issue to the

compensatory claim alone, Allstate filed a motion in limine to preclude Wolfe

from introducing evidence of the punitive damage award at trial.  If the issue for

the jury was limited, as the district court held, to the conduct of negotiations on the

compensatory claim, then the existence of the punitive damage award was

completely irrelevant.[11]  Accordingly, under Fed. R. Evid. 401, 402 such non-

probative evidence should have been excluded.  <u>See</u>, <u>e.g.</u>, <u>W.V. Realty Inc. v.</u>

<u>Northern Ins. Co.</u>, 334 F.3d 306 (3d Cir. 2003) (admitting evidence that was not

---

[11]     If the district court had predicted that Pennsylvania would (contrary to <u>Zieman</u>, <u>Lira</u> and <u>PPG</u>,) require an insurer to protect insureds against punitive awards in the settlement of compensatory claims, the punitive award would have been relevant.  The district court however chose a different approach and created a duty that did not implicate the punitive award.  In fact, the district court repeatedly failed to address Allstate's argument that Pennsylvania would adopt <u>Zieman</u>, <u>et al.</u>, by adopting the fiction that the claim in this case related to the compensatory claim alone.

probative of bad faith reversible error).  Consistency required that the district court limit the evidence to fit within the contours of the clam it had established.

Wolfe defended the admissibility of the punitive award because he claimed it was an element of his damages.  That argument, however, is legally incorrect.  Under 42 Pa. C.S.A. § 8371, the only damages available are interest, attorney's fees and punitive damages.  Accordingly the punitive award had no bearing on damages under the statutory bad faith claim.  Similarly, the punitive award was not relevant to the common law contract claim or the UTPCPL claim.  Both of those causes of action only permit recovery of losses actually incurred.  See Gedeon v. State Farm Mut. Ins. Co., 188 A.2d 320 (Pa. 1963) (Plaintiff had no common law contractual bad faith claim because he did not pay the damages he was claiming out of his own pocket); 73 P.S. § 201-9.2 (UTPCPL requires proof of ascertainable loss).  Zierle admitted that he had never paid a penny of the punitive award and the assignment guaranteed that he never would.  App. at A114.  Thus, the $50,000 punitive award was completely irrelevant to all of Wolfe's claims.

Allstate also asked the district court to exclude evidence of the punitive award under Fed. R. Evid. 403 because the likelihood of jury confusion and unfair prejudice to Allstate from the admission of such evidence outweighed any minimal probative value of such evidence.  See Fed. R. Evid. 403; Griffin v. De Lage Landen Fin. Servs., No. 04-5352, 2005 U.S. Dist. LEXIS 31121, at *9

(E.D. Pa. Dec. 5, 2005) (citing <u>Coleman v. Home Depot, Inc.</u>, 306 F. 3d 1333, 1353-44 (3d Cir. 2002)). Allstate argued that evidence of the punitive award would tempt the jury to feel sorry for Zierle because he had been exposed to personal liability. Further, evidence of the punitive award would likely lead the jury to feel Wolfe had gotten less than the jury had awarded him.

The district court denied Allstate's motion in limine and Allstate's concerns were vindicated at trial. Plaintiff's counsel referred to the punitive damage claim and award repeatedly throughout the two day trial. App. at A77; A85; A97; A155; A129-A130; A169. The strategy succeeded admirably as the jury found that Allstate acted in bad faith and awarded Wolfe the very same $50,000 sum that had been awarded by the Lycoming County jury as punitive damages against Zierle. There can be no credible argument that the result in the case was coincidence. Rather the jury improperly decided to punish Allstate for failing to protect Zierle against the punitive award and to make Allstate pay Wolfe the exact amount of the punitive award – not for doing anything improper with respect to the compensatory claim alone.

By allowing the claim to proceed on the basis of a nonexistent duty and then allowing the jury to hear evidence that was relevant only to a duty that the court ruled was not relevant to the case, the district court permitted the jury to circumvent Pennsylvania's policy against punitive damages. This is exactly the

evil warned against in <u>Lira</u>, which held that allowing a punitive award assessed

against an insured to be an item of bad faith damages would:

> In practical application, force insurers to settle cases
> involving punitive damages in order to avoid liability for
> the same punitive damages in subsequent bad faith
> actions.  Such a result would be contrary to the principle
> that insurers have no absolute duty to settle in order to
> protect their insureds from punitive judgments.

913 P.2d at 518.

　　　　In effect the Court's evidentiary ruling permitted the jury to shift the

burden of punitive damages from the tortfeasor, Zierle, to his insurer, in violation

of Pennsylvania's express public policy.  <u>See</u> <u>Esmond</u>, 224 A.2d 793, 799.  Thus,

if the Court does not reverse the bad faith judgment outright as a matter of law, it

should remand to the district court for a new trial in which all evidence of the

punitive damage claim will be excluded.

III.　　The District Court Erred As A matter Of Law In Holding That Wolfe Had
　　　　<u>Standing To Assert Zierle's Statutory Bad Faith Claim.</u>

　　　　It is well settled Pennsylvania law that tort claims are not assignable

<u>See</u> <u>e.g.</u>, <u>March v. Western N.Y. and Pa. Ry. Co.</u>, 53 A. 1001, 1001-2  (Pa. 1903);

<u>Tugboat Indian Co. v. A/S Ivarans Rederi</u>, 5 A.2d 153, 155 (Pa. 1939). The

statutory bad faith claim in this case is a tort claim belonging to Karl Zierle that

Wolfe asserted based on a purported assignment of the claim by Zierle.

Consequently, as two judges from the United States District Court for the Eastern

District of Pennsylvania have held, the statutory bad faith claim was not assignable.  See Feingold v. Liberty Mut. Group, Civ. A. No. 11-5364, 2012 U.S. Dist. LEXIS 25273 (E.D. Pa. Feb. 28, 2012); (Bartle, J.) Feingold v. State Farm Mut. Auto Ins. Co., Civ. A. No. 11-6309, 2012 U.S. Dist. LEXIS 46696, *8-0 (E.D. Pa. Apr. 3, 2012). (O'Neill, J.)

There can be no doubt that a statutory bad faith claim is a tort claim. The bad faith statute was passed as a response to a Pennsylvania Supreme Court case holding that Pennsylvania did not allow common law bad faith tort claims. The bad faith statute allows punitive damages, which are available only in tort cases, and the Pennsylvania Supreme Court has held that the two year tort statute of limitations applies to statutory bad faith claims.  See Ash v. Continental Ins. Co., 932 A.2d 877, 884 (Pa. 2007).  Therefore, the statutory bad faith claim in this case was not assignable, and Wolfe had no standing to assert it.  The Court erred in denying Allstate's Rule 12(b)(1) motion on this issue.[12]

To the extent there is intermediate appellate authority in Pennsylvania suggesting that bad faith claims are assignable (See e.g., Brown v. Candelora, 708 A.2d 104, 110 (Pa. Super. Ct. 1998)) that authority is trumped by the anti-assignment policy.  As Judge Bartle pointed out, Candelora and other cases allowing assignment of bad faith claims were decided at a time when it had not

---

[12]    Although Allstate addressed this issue last in this brief, the issue involves the district court's subject matter jurisdiction.  Therefore, this Court must resolve this issue before addressing Allstate's other arguments.

been definitively determined by the Pennsylvania Supreme Court that statutory bad faith claims sound in tort.  See Feingold v. Liberty Mutual, 2012 U.S. Dist. LEXIS 25273 at *11-12.  Moreover, the issue had never been addressed by the Pennsylvania Supreme Court.  Id.  Thus, Candelora does not govern this situation. The district court should have dismissed the statutory bad faith claim for lack of standing.

## CONCLUSION

The district court's decisions in this case were riddled with legal errors and inconsistencies. This Court should rule, as a matter of law, that an insurer that tries a case and achieves a compensatory verdict within the policy limits cannot be liable for bad faith under 42 Pa. C.S.A. § 8371, even if the insured suffers a punitive damage award that is not covered by the policy. Accordingly, this Court should vacate the judgment in this case and direct entry of judgment in favor of Allstate. Alternatively, this Court should order a new trial of the bad faith claim alone and direct that evidence of the punitive damage award be excluded from evidence. Additionally, this Court should vacate the judgment on the statutory bad faith claim because the claim was not assignable and Wolfe had no standing to pursue it.

April 19, 2013                              Respectfully submitted,

                                            /s/ Marshall Walthew
                                            Marshall Walthew
                                            walthewm@pepperlaw.com
                                            Sara B. Richman
                                            richmans@pepperlaw.com
                                            John L. Schweder, II
                                            schwederj@pepperlaw.com
                                            PEPPER HAMILTON LLP
                                            3000 Two Logan Square
                                            Eighteenth & Arch Streets
                                            Philadelphia, PA  19103-2799
                                            215-981-4000

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I, Marshall Walthew, whose name appears on the Brief of Appellant, Allstate Property and Casualty Insurance Company, is a member of the Bar of this Court.


*/s/ Marshall Walthew*
Marshall Walthew

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)

I, Marshall Walthew, hereby certify that the Brief of Appellant,

Allstate Property and Casualty Insurance Company complies with the requirements

of F.R.A.P. 32(a)(7)(A) because it does not exceed 30 pages.


*/s/ Marshall Walthew*
Marshall Walthew

# CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I, Marshall Walthew, hereby certify that the text of the electronic brief and the hard copies of the brief are identical.

*/s/ Marshall Walthew*
Marshall Walthew

## CERTIFICATE OF VIRUS CHECK

I, Marshall Walthew, hereby certify that a virus check was performed on the electronic brief using Symantec Endpoint before being e-filed with the Court.

*/s/ Marshall Walthew*
Marshall Walthew

# CERTIFICATE OF SERVICE

I, Marshall Walthew, hereby certify that on April 19, 2013, a true and correct copy of the Brief of Appellant, Allstate Property and Casualty Insurance Company was served via ECF upon the following:

Robert Elion, Esquire
Michael Dinges, Esquire
Elion, Wayne, Greico, Carlucci,
Shipman, Dinges & Dinges, P.C.
125 East Third Street
Williamsport, PA  17701

*/s/ Marshall Walthew*
Marshall Walthew