UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

## Case No. 12-4450

JARED WOLFE

*Appellee*

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY
*Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
No. 4:10-cv-0800

## APPENDIX VOL. I, pp. A1-A58

Marshall J. Walthew
Sara B. Richman
John L. Schweder, II
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000
*Attorneys for Appellant Allstate*
*Property and Casualty Insurance Co.*

Dated: April 19, 2013

# TABLE OF CONTENTS

**Page**

## VOLUME I:

Notice of Appeal (filed December 5, 2012) — A0001

Judgment in a Civil Action entered in favor of the plaintiff, Jared Wolfe and against defendant, Allstate Property and Casualty Insurance Co. (entered November 8, 2012) — A0004

Memorandum & Order denying Allstate's Motion in Limine to Preclude Plaintiff from Introducing Evidence of the Punitive Damages Award Against Karl Zierle and to Preclude Plaintiff from Claiming the Punitive Award as an Item of Damages (filed July 23, 2012) — A0005

Memorandum & Order denying Allstate's Motion to Dismiss Plaintiff's Statutory Bad Faith and UTPCPL Claims Pursuant to Rule 12(b)(1) for Lack of Standing (filed July 12, 2012) — A0014

Memorandum and Order adopting the Report and Recommendation of Magistrate Judge Methvin and denying Allstate's Motion for Summary Judgment (filed March 30, 2012) — A0022

Report and Recommendation on Defendant's Motion for Summary Judgment of Magistrate Judge Methvin (filed February 27, 2012) — A0030

## VOLUME II:

Complete Copy of Docket Entries — A0059

November 5, 2012 Trial Testimony – Day 1 — A0072

November 6, 2012 Trial Testimony – Day 2 — A0117

November 7, 2012 Trial Testimony – Day 3 — A0164

Allstate's Claim Diary ("Involved Person Statements")          A0183

Timeline in Wolfe v. Zierle          A0336

MRI C/Spine Results Report (dated November 4, 2004)          A0344

January 30, 2006 MRO C/Spine Report          A0345
December 1, 2006 Allstate Insurance Policy          A0346

February 27, 2006 Discharge Summary          A0391

March 30, 2006 X-Ray Report          A0393

May 9, 2006 X-Ray Report          A0394

March 2, 2007 Police Report          A0395

May 17, 2007 MRI C/Spine Report          A0402

July 31, 2007 Report from Dr. Rajjoub          A0403

April 8, 2008 Letter from M. Dinges to K. Broadhead          A0404

**VOLUME III**

April 11, 2008 Colossus Assessment          A0469

April 30, 2008 Letter from K. Broadhead to M. Dinges          A0474

May 8, 2008 Letter from K. Broadhead to K. Zierle          A0475

May 8, 2008 Summons and Complaint from K. Zierle to Allstate          A0477

June 23, 2008 Letter from K. Broadhead to K. Zierle          A0485

July 1, 2008 Letter from G. Drab to G. Weber          A0487

December 3, 2008 Letter from M. Dinges to G. Weber          A0488

January 27, 2009 Motion for Leave of Court to Amend Complaint          A0489

Pursuant to Pa.C.S.A. 1003

January 28, 2009 Letter from G. Weber to K. Broadhead                    A0493

February 2, 2009 Letter from K. Broadhead to K. Zierle                  A0495

February 9, 2009 Letter from G. Weber to K. Zierle                      A0496

February 9, 2009 Answer to Motion for Leave of Court to Amend           A0497
Complaint

March 4, 2009 Order in Wolfe v. Zierle                                  A0500

June 17, 2009 Letter from G. Weber to K. Zierle                         A0501

June 23, 2009 Letter from M. Dinges to G. Weber                         A0502

June 29, 2009 Letter from G. Weber to K. Broadhead                      A0503

August 17, 2009 Email chain between G. Weber and K. Broadhead           A0504

September 3, 2009 Motion in Limine in Wolfe v. Zierle                    A0505

September 4, 2009 Email from G. Weber to K. Broadhead                    A0510

September 9, 2009 Letter from G. Weber to K. Broadhead                   A0511

September 28, 2009 Verdict form in Wolfe v. Zierle                       A0514

October 2, 2009 Post Trial Motion for Remittitur in Wolfe v. Zierle     A0517

October 14, 2009 Letter from G. Weber to K. Zierle                      A0523

November 24, 2009 Opinion and Order in Wolfe v. Zierle                   A0524

December 1, 2009 Letter from G. Weber to K. Zierle                      A0526

March 19, 2010 Assignment of Rights                                     A0530

March 12, 2011 Plaintiff's Response to Defendant Allstate's First Set of   A0535

Interrogatories

June 30, 2011 Expert Report of Dr. William Warfel                    A0543

November 20, 2008 Deposition Transcript of Karl Zierle in <u>Wolfe v.</u>    A0559
<u>Zierle</u>

September 9, 2009 Deposition Transcript of Dr. Eric Longenbach in    A0564
<u>Wolfe v. Zierle</u>

March 23, 2010 Deposition Transcript of Kevin Broadhead              A0574

May 13, 2011 Deposition Transcript of Karl Zierle                    A0627

May 13, 2011 Deposition Transcript of Michael Dinges                 A0666

May 23, 2011 Deposition Transcript of Rebecca Penn                   A0693

May 23, 2011 Deposition Transcript of Gary Weber                     A0698

May 25, 2011 Deposition Transcript of David Graham                   A0724

August 2, 2011 Deposition Transcript of William Warfel              A0744

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JARED WOLFE | : |
| Plaintiff, | :      CIVIL ACTION |
| v. | :      No. 4:10-cv-00800 |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | :      Hon. John E. Jones III |
| Defendant. | : |

## NOTICE OF APPEAL

Notice is hereby given that Defendant Allstate Property and Casualty

Insurance Company ("Allstate") appeals to the United States Court of Appeals for

the Third Circuit from: (1) the Judgment entered in this action on November 8,

2012 (Doc. 107); (2) the July 23, 2012 Order denying Allstate's Motion *in Limine*

to Preclude Plaintiff from Introducing Evidence of the Punitive Damages Award

Against Karl Zierle and to Preclude Plaintiff from Claiming the Punitive Award as

an Item of Damages (Doc. 93); (3) the July 12, 2012 Order denying Allstate's

Motion to Dismiss Plaintiff's Statutory Bad Faith and UTPCPL Claims Pursuant to

Rule 12(b)(1) for Lack of Standing (Doc. 86); and (4) the March 30, 2012 Order

adopting the Report and Recommendation of Magistrate Judge Methvin and

denying Allstate's Motion for Summary Judgment (Doc. 59).


December 5, 2012                              Respectfully submitted,

                                             /s/ Marshall Walthew
                                             Marshall Walthew
                                             walthewm@pepperlaw.com
                                             Sara B. Richman
                                             richmans@pepperlaw.com
                                             PEPPER HAMILTON LLP
                                             3000 Two Logan Square
                                             Eighteenth & Arch Streets
                                             Philadelphia, PA 19103-2799
                                             215.981.4000

A0002

## CERTIFICATE OF SERVICE

I, Marshall Walthew, hereby certify that on December 5, 2012, a true

and correct copy of Defendant Allstate Property and Casualty Insurance

Company's Notice of Appeal was served via ECF upon the following:

> Robert Elion, Esquire
> Michael Dinges, Esquire
> Elion, Wayne, Greico, Carlucci, Shipman, Dinges & Dinges,
> P.C.
> 125 East Third Street
> Williamsport, PA  17701


> /s/ Marshall Walthew_____

A0003

AO 450 (Rev. 01/09)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Middle District of Pennsylvania

| | |
|---|---|
| Jared Wolfe <br> *Plaintiff* <br> v. <br> Allstate Property and Casualty Insurance Co. <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.  4:10cv800

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

☐ the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ . recover costs from the plaintiff *(name)* _____

☑ other:  Judgment be and is hereby ENTERED in favor of the plaintiff, Jared Wolfe and against defendant,
Allstate Property and Casualty Insurance Co., in the amount of $50,000 in accordance with the jury verdict
rendered on November 7, 2012.

This action was *(check one):*

☑ tried by a jury with Judge  John E. Jones III _____ presiding, and the jury has
rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision
was reached.

☐ decided by Judge _____ on a motion for

Date: _____11/08/2012_____

*CLERK OF COURT*

_____
s/ Elizabeth A. O'Donnell
*Signature of Clerk or Deputy Clerk*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JARED WOLFE,                        :
                                    :   No. 4:10-CV-800
           Plaintiff,               :
                                    :
     v.                             :   Hon. John E. Jones III
                                    :
ALLSTATE PROPERTY &                 :
CASUALTY INSURANCE                  :
COMPANY,                            :
                                    :
           Defendants.              :

## MEMORANDUM & ORDER

### July 23, 2012

Presently pending before the Court is the Motion in Limine (Doc. 63) of the

Defendant, Allstate Property and Casualty Insurance Company, to preclude the

Plaintiff, Jared Wolfe, from introducing evidence at trial of the punitive damages

award against Karl Zierle and to preclude Plaintiff from claiming the punitive

damage award as an item of damages in the case *sub judice*. For the reasons fully

articulated herein, we will deny the said Motion.

## I.    PROCEDURAL HISTORY & STATEMENT OF FACTS

On March 2, 2007, while driving under the influence of alcohol, Karl Zierle

("Zierle"), caused a car accident which resulted in injury to the Plaintiff, Jared

Wolfe ("Plaintiff" or "Wolfe"). Zierle was insured by Defendant Allstate Property

and Casualty Insurance Company ("Defendant" or "Allstate"), and Zierle's policy

("the Policy") provided liability coverage up to a Policy limit of $50,000 per

person. The Policy expressly excludes coverage for an award of punitive damages

based upon gross negligence or reckless conduct. While the Policy imposed a duty

upon Allstate to defend Zierle in any lawsuit arising out of the use of his vehicle, it

also provided Allstate with the ability to control and direct the litigation, including

the right to control all decisions regarding settlement of the claim.

On April 8, 2008, Plaintiff, through counsel, presented a final settlement

offer of $25,000 to Allstate, which Allstate flatly rejected. Allstate countered with

an offer of $1,200, which Plaintiff likewise rejected. Plaintiff then filed a lawsuit

(the "Underlying Action") against Zierle in the Court of Common Pleas for

Lycoming County, Pennsylvania, seeking both compensatory and punitive

damages arising from the motor vehicle accident. Plaintiff continued to pursue a

settlement below his initial $25,000 offer, but Allstate refused to change its

position and did not deviate from its initial $1,200 offer. The record at summary

judgment demonstrated that if Allstate had settled the case, Plaintiff would have

signed a release, shielding Zierle from any personal liability. Despite the urging of

2

Zierle and his attorneys, Allstate refused to increase the settlement amount.[1]

The case proceeded to trial on September 28, 2009, and a Lycoming County jury returned a verdict for the Plaintiff, awarding compensatory damages in the amount of $15,000 and punitive damages in the amount of $50,000. While Allstate indemnified Zierle from the compensatory damages, the Policy expressly excluded indemnification for punitive damage awards and Zierle thus incurred a personal obligation to pay the punitive damages as they were beyond the Policy's coverage. As a result, on March 12, 2010, Zierle assigned to the Plaintiff any and all rights, claims and causes of action arising out of Allstate's failure to properly defend, protect and indemnify Zierle.

Thereafter, on March 19, 2010, Plaintiff commenced the instant civil action in the Court of Common Pleas for Lycoming County, asserting that Allstate had: (1) acted in bad faith in insuring Zierle pursuant to 42 PA. STAT. ANN. § 8371 (Count I); (2) violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") pursuant to 73 PA. STAT. ANN. § 201-1 *et seq* (Count II); and (3) breached its duty of good faith in its contract with the insured (Count III). On April 15, 2010, Allstate removed the case to this Court. (Doc. 1).

---

[1] Allstate did eventually agree to increase the settlement offer to $1,400 if Plaintiff deviated substantially from his $25,000 figure.

3

Allstate filed a Motion to Dismiss Count II on April 22, 2010 (Doc. 7). This

Court granted said Motion on June 28, 2010, but granted the Plaintiff a period of

time to amend the deficient complaint. (Doc. 14). Plaintiff filed an Amended

Complaint (Doc. 16) on July 2, 2010. Allstate subsequently filed a Second Motion

to Dismiss (Doc. 21), which this Court referred to Magistrate Judge Prince for a

report and recommendation ("R&R"). (Doc. 23). Judge Prince issued an R&R

which recommended denying Allstate's motion in its entirety, (Doc. 25), and this

Court issued a memorandum opinion adopting the R&R in its entirety and denying

Allstate's motion on January 10, 2011. (Doc. 28).

Following a period of discovery, Allstate moved for summary judgment on

July 1, 2011. (Doc. 35). The motion was referred to Magistrate Judge Methvin for

an R&R, and on February 27, 2012, Judge Methvin issued an R&R recommending

denial of Allstate's motion in its entirety. (Doc. 56). This Court agreed with Judge

Methvin that genuine issues of fact remained for trial and thus adopted the R&R in

its entirety, denying Allstate's motion. (Doc. 59).

Allstate filed a second Motion to Dismiss (Doc. 65), seeking dismissal of

Counts I and II of the Amended Complaint pursuant to a line of cases in the

Eastern District of Pennsylvania. This Court denied that Motion in its entirety by

Order dated July 12, 2012. (Doc. 86). Both parties filed cross-motions in limine

4

seeking preclusion of the opposing party's expert, (Docs. 51, 69), which this Court

granted in part and denied in part. (Docs. 91, 92). On June 14, 2012, Allstate filed

the instant Motion to preclude evidence related to the punitive damages award in

the underlying litigation and to further preclude Plaintiff from claiming said award

as an item of damages in this litigation. (Doc. 63). The Motion is fully briefed

(Docs. 64, 72) and thus ripe for our review.

## II.   DISCUSSION

Allstate maintains that Plaintiff is barred as a matter of public policy from

claiming the $50,000 punitive damages award from the Underlying Litigation as an

item of damages in this bad faith and breach of contract action. Allstate further

contends that any evidence related to this punitive damages award should be

precluded because it is irrelevant. We first address whether this award may be

claimed as an item of damages in the case *sub judice*.

### A.   May Plaintiff Claim the $50,000 Punitive Damages Award from the Underlying Litigation as an Item of Damages in this Action?

Courts have long held that punitive damages are uninsurable.[2] *See Esmond v.*

*Lizcio*, 224 A.2d 793, 799 (Pa. Super. Ct. 1966) ("[P]ublic policy does not permit a

---

[2] Magistrate Judge Methvin acknowledged as much in her R&R, expressly stating that "Allstate is correct that punitive damages are uninsurable." (Doc. 56, p. 17).

5

tortfeasor . . . to shift the burden of punitive damages to his insurer."). Allstate submits that pursuant to this rule, it necessarily follows that in a breach of contract or bad faith claim against an insurer, an insured (or, as here, his assignee) is not permitted to claim as an item of damages a punitive damages award from the underlying litigation in which the bad faith conduct allegedly occurred. Plaintiff posits that the award derives from Allstate's failure to negotiate a settlement of the *compensatory damages* portion of his claim in good faith. Plaintiff contends that he is not seeking indemnification for punitive damages but instead seeking compensation for that part of the injury suffered as a result of Allstate's breach of its contractual duties and its violation of § 8371. We agree with Plaintiff.

Notably, the conduct which supports Plaintiff's bad faith and breach of contract claims before this Court precedes the punitive damages award in the Underlying Action. Plaintiff's argument is, in essence, that but for Allstate's bad faith conduct in negotiating settlement of the compensatory damages portion of Wolfe's claim, punitive damages likely would not have been awarded and Zierle would never have been exposed to a $50,000 adverse personal judgment.

Plaintiff's logic is sound. The damages sought to be reimbursed here represent damages suffered as a result of Allstate's pre-trial failure to evaluate the compensatory claim and make reasonable attempts to negotiate a settlement of the

6

A0010

same. Plaintiff is not seeking recovery of punitive damages per se, but instead the damages stemming from Allstate's alleged breach of contract and bad faith conduct prior to the trial in the Underlying Action. Notably, if Allstate had properly evaluated the compensatory damages portion of the claim and negotiated a reasonable settlement, Wolfe, the plaintiff here and in the Underlying Action, would have executed a release which insulated Zierle from any potential punitive damages claim, and Zierle would not have been exposed to personal liability.

While it is true that Allstate need not, and indeed cannot, indemnify Zierle for the punitive damages award entered in the underlying litigation, *see Esmond*, 224 A.2d at 799, we do not believe that this principle extends so far as to prohibit Plaintiff from recovering damages in the same amount stemming from Allstate's breach of contract and violation of § 8371. The purpose of § 8371 is to hold insurers responsible for their bad faith conduct, to protect insureds, and to ensure fair and efficient resolution of claims. If, indeed, an insurer acts in bad faith, and that bad faith exposes the insured, or heightens the insured's exposure, to personal liability, barring the insured from seeking compensation for damages suffered as a result of the insurer's conduct would belie the very purpose of a statutory bad faith claim. Accordingly, we will deny Allstate's Motion in this regard.

7

### B.    Is Evidence of Punitive Damage Award Admissible at Trial in this Action?

Because we have found that the $50,000 award against Zierle in the

Underlying Action is a compensable item of damages in the case *sub judice*, we

cannot agree with Allstate's contention that evidence related to the same is

irrelevant and inadmissible as such. The Plaintiff will be permitted to present

evidence of the manner in which Zierle was harmed by Allstate's failure to

negotiate a settlement of the compensatory portion of the litigation in good faith,

and the damages that he suffered as a result thereof. Accordingly, we will deny

Allstate's Motion in this regard as well.

### III.    CONCLUSION

For all of the reasons thoroughly articulated herein, we will deny

Defendant's Motion.

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Defendant's Motion in Limine (Doc. 63) is **DENIED** in its

entirety.

2.    Evidence related to the punitive damages award entered in the

underlying litigation **SHALL BE ADMISSIBLE** at trial.

Further, Plaintiff **SHALL BE PERMITTED** to claim the

8

$50,000 damages award as an item of damages in this litigation.

/s John E. Jones III
John E. Jones III
United States District Judge

9

A0013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JARED WOLFE,                          :
                                      :   No. 4:10-CV-800
          Plaintiff,                 :
                                      :
     v.                              :   Hon. John E. Jones III
                                      :
ALLSTATE PROPERTY &                   :
CASUALTY INSURANCE                    :
COMPANY,                              :
                                      :
          Defendants.               :

### MEMORANDUM & ORDER

### July 12, 2012

Presently pending before the Court is the Motion to Dismiss Plaintiff's

Statutory Bad Faith and UTPCPL Claims Pursuant to Rule 12(b)(1) (Doc. 65) of

Defendant Allstate Property and Casualty Insurance Company. For the reasons

fully articulated herein, we will deny the Motion in its entirety.

## I.    PROCEDURAL HISTORY & STATEMENT OF FACTS

On March 2, 2007, while driving under the influence of alcohol, Karl Zierle

("Zierle"), caused a car accident which resulted in injury to the Plaintiff, Jared

Wolfe ("Plaintiff" or "Wolfe"). Zierle was insured by Defendant Allstate Property

and Casualty Insurance Company ("Defendant" or "Allstate"), and Zierle's policy

("the Policy") provided liability coverage up to a Policy limit of $50,000 per

1

person. The Policy expressly excludes coverage for an award of punitive damages based upon gross negligence or reckless conduct. While the Policy imposed a duty upon Allstate to defend Zierle in any lawsuit arising out of the use of his vehicle, it also provided Allstate with the ability to control and direct the litigation, including the right to control all decisions regarding settlement of the claim.

On April 8, 2008, Plaintiff presented a final settlement offer of $25,000 to Allstate, which Allstate flatly rejected. Allstate countered with an offer of $1,200, which Plaintiff likewise rejected. Plaintiff then filed suit against Zierle in the Court of Common Pleas for Lycoming County, Pennsylvania, seeking both compensatory and punitive damages arising from the March 2007 motor vehicle accident. Plaintiff continued to pursue settlement below his initial $25,000 offer, but Allstate refused to change its position and did not deviate from its initial $1,200 offer. The record at summary judgment demonstrated that if Allstate had settled the case, Plaintiff would have signed a release, shielding Zierle from any personal liability. Despite the urging of Zierle and his attorneys, Allstate refused to increase the settlement amount.[1]

The case proceeded to trial on September 28, 2009, and a Lycoming County

---

[1] Allstate did eventually agree to increase the settlement offer to $1,400 if Plaintiff deviated substantially from his $25,000 figure.

2

jury returned a verdict for the Plaintiff, awarding compensatory damages in the

amount of $15,000 and punitive damages in the amount of $50,000. While Allstate

indemnified Zierle from the compensatory damages, the Policy expressly excluded

indemnification for punitive damage awards and Zierle thus incurred a personal

obligation to pay the punitive damages as they were beyond the Policy's coverage.

As a result, on March 12, 2010, Zierle assigned to the Plaintiff any and all rights,

claims and causes of action arising out of Allstate's failure to properly defend,

protect and indemnify Zierle.

Thereafter, on March 19, 2010, Plaintiff commenced the instant civil action

in the Court of Common Pleas for Lycoming County, asserting that Allstate had:

(1) acted in bad faith in insuring Zierle pursuant to 42 PA. STAT. ANN. § 8371

(Count I); (2) violated Pennsylvania's Unfair Trade Practices and Consumer

Protection Law ("UTPCPL") pursuant to 73 PA. STAT. ANN. § 201-1 *et seq* (Count

II); and (3) breached its duty of good faith in its contract with the insured (Count

III). On April 15, 2010, Allstate removed the case to this Court. (Doc. 1).

Allstate filed a Motion to Dismiss Count II on April 22, 2010 (Doc. 7). This

Court granted said Motion on June 28, 2010, but granted the Plaintiff a period of

time to amend the deficient complaint. (Doc. 14). Plaintiff filed an Amended

Complaint (Doc. 16) on July 2, 2010. Allstate subsequently filed a Second Motion

3

to Dismiss (Doc. 21), which this Court referred to Magistrate Judge Prince for a report and recommendation ("R&R"). (Doc. 23). Judge Prince issued an R&R which recommended denying Allstate's motion in its entirety, (Doc. 25), and this Court issued a memorandum opinion adopting the R&R in its entirety and denying Allstate's motion on January 10, 2011. (Doc. 28).

Following a period of discovery, Allstate moved for summary judgment on July 1, 2011. (Doc. 35). The motion was referred to Magistrate Judge Methvin for an R&R, and on February 27, 2012, Judge Methvin issued an R&R recommending denial of Allstate's motion in its entirety. (Doc. 56). This Court agreed with Judge Methvin that genuine issues of fact remained for trial and thus adopted the R&R in its entirety, denying Allstate's motion. (Doc. 59).

Allstate comes now with the instant Motion to Dismiss (Doc. 65) seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) of Plaintiff's claims in Counts I and II of the Amended Complaint. The Motion has been fully briefed (Docs. 66, 72) and is thus ripe for our review.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

4

A0017

A facial attack challenges whether the plaintiff has properly pled jurisdiction. *Id.*

"In reviewing a facial attack, the court must only consider the allegations of the

complaint and documents referenced therein and attached thereto, in the light most

favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176

(3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891). A factual attack, in contrast,

challenges jurisdiction based on facts apart from the pleadings. *Mortensen*, 549

F.2d at 891. "When a defendant attacks subject matter jurisdiction 'in fact,' ... the

Court is free to weigh the evidence and satisfy itself whether it has power to hear

the case. In such a situation, 'no presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group

Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting

*Mortensen*, 549 F.2d at 891).

## III.   DISCUSSION

Allstate raises a facial challenge to Plaintiff's standing to bring the instant

lawsuit, contending that this Court lacks subject matter jurisdiction over Plaintiff's

claims in Counts I and II, even assuming the allegations pled therein to be true.

Allstate grounds its argument in two recent cases out of the United States

District Court for the Eastern District of Pennsylvania where that court held that

5

bad faith claims brought under 42 PA. STAT. ANN. § 8371 are not assignable due to their nature as unliquidated tort claims.[2] *See Feingold v. Liberty Mutual Group (Feingold I)*, 2012 U.S. Dist. LEXIS 25273 (E.D. Pa. Feb. 28, 2012); *Feingold v. State Farm Mutual Auto. Ins. Co. (Feingold II)*, 2012 U.S. Dist. LEXIS 46696 (E.D. Pa. Apr. 3, 2012). In *Feingold I* and *Feingold II*, the court concluded that because Pennsylvania law prohibits assignment of claims for unliquidated tort damages, an assignment of § 8371 claims is invalid. *See Feingold I*, 2012 U.S. Dist. LEXIS 25273, at *7-8; *Feingold II*, 2012 U.S. Dist. LEXIS 46696, at 8.

Plaintiff contends that *Feingold I* and *Feingold II* were decided in error and that the Eastern District has improperly interpreted Pennsylvania law. We agree that the decisions are inconsistent with Pennsylvania law and, further, inconsistent with the law of this Circuit. The Pennsylvania Superior Court held in *Brown v. Candelora*, 708 A.2d 104 (Pa. Super. Ct. 1998), that:

> Under Pennsylvania Law, as well as in the majority of American jurisdictions, an insured's claims against his or her insurer, in the nature of breach of contract, breach of a fiduciary duty, and bad faith, as well as claims under section 8371 of the judicial code for punitive damages, counsel fees and interest, are assignable.

*Id.* at 110. Defendant contends that the decision in *Brown* is easily distinguished

---

[2] As noted in previous opinions, this diversity action is governed by Pennsylvania law.

6

and, in any event, superceded because the opinion predates the Pennsylvania

Supreme Court's holding in *Ash v. Cont'l Ins. Co.*, 932 A.2d 877 (Pa. 2007) that §

8371 claims sound in tort rather than contract. (Doc. 66, p. 3, n.1).

    The law of this Circuit refutes this contention. Indeed, in *Haugh v. Allstate*

*Insurance Co.*, in the same opinion in which it predicted that the Pennsylvania

Supreme Court would hold that § 8371 actions sound in tort and not in contract, the

Third Circuit stated: "[u]nder Pennsylvania law an insured's claims against his

insurer for breach of contract and breach of fiduciary duty, *and his claims under*

*section 8371 for punitive damages, counsel fees and interest are assignable.*"

*Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 239 (3d Cir. 2003) (emphasis added)

(citing *Brown*, 708 A.2d at 110). The Circuit's decision in *Haugh* rebuts the

Defendant's contention that a finding that § 8371 claims sound in tort necessarily

prohibits the assignment thereof. Consistent with the law of this Circuit and, in our

view, the law of Pennsylvania, we hold that an insured's § 8371 claim for punitive

damages, counsel fees and interest are assignable and the assignment of the same

in the case *sub judice* is valid. Accordingly, we will deny Allstate's Motion to

Dismiss as it pertains to Count I of the Amended Complaint.

    Allstate further contends that the rationale of the *Feingold* cases likewise

invalidates the assignment of Zierle's claims under the Unfair Trade Practices and

7

Consumer Protection Law ("UTPCPL") because such claims are also claims for

unliquidated tort damages. As noted above, we have declined Defendant's

invitation to follow the *Feingold* cases. Allstate submits no authority to this Court

supporting its position that UTPCPL claims are unassignable as either a statutory

penalty or a claim for unliquidated tort damages. Other than general citation to

*Feingold I* and *II*, Allstate presents neither argument nor example supporting its

broad assertion that the claim is invalid and must be dismissed. Accordingly, we

find no merit in this argument and will deny Allstate's Motion to Dismiss as it

pertains to Count II of Plaintiff's Amended Complaint.

## IV. CONCLUSION

For all of the reasons articulated above, this Court will deny the Defendant's

Motion to Dismiss Counts I and II (Doc. 65) in its entirety.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendant Allstate Property & Casualty Insurance Company's Motion

to Dismiss (Doc. 65) is **DENIED** in its entirety.

/s John E. Jones III
John E. Jones III
United States District Judge

8

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JARED WOLFE, | : | 4:10-cv-800 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| ALLSTATE PROPERTY AND | : | Hon. Mildred E. Methvin |
| CASUALTY INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**March 30, 2012**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation

("R&R") of Magistrate Judge Mildred E. Methvin (Doc. 56), filed on February 27,

2012, which recommends that the Defendant's Motion for Summary Judgment

(Doc. 35) be denied.  Objections to the R&R were filed by Defendant Allstate

Property and Casualty Insurance Company ("Allstate") on March 12, 2012.  (Doc.

57) and the Plaintiff Jared Wolfe ("Plaintiff" or "Wolfe") responded to those

objections on March 26, 2012.  (Doc. 58).  Accordingly, this matter is ripe for our

review.  For the reasons set forth below, the Court will adopt the R&R and deny

the Defendant's motion.

1

## I.    STANDARD OF REVIEW[1]

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

## II.    FACTUAL BACKGROUND[2]

On March 2, 2007, in Lycoming County, Pennsylvania, Karl Zierle ("Zierle"), while driving under the influence of alcohol, caused a car accident which resulted in injury to Plaintiff. Zierle's insurance policy (the "Policy"), provided indemnity against liability for damages incurred up to $50,000 for an

---

[1] The standard applied to motions for summary judgment is set forth by Magistrate Judge Methvin at pages 15 to 17 of her R&R.

[2] Magistrate Judge Methvin undertook an exhaustive review of the undisputed facts within her R&R at pages 1 to 15. For the sake of judicial economy, we shall only summarize the facts herein, but direct the reader to the R&R for a full factual exposition.

2

individual. The Policy contained a limitation that excludes from indemnity an award of punitive damages based upon gross negligence and/or reckless conduct. While the Policy imposed a duty on Allstate to defend Zierle in any lawsuit arising out of the use of his motor vehicle, it also granted Allstate the ability to control litigation, including the right to control all decisions regarding settlement of the claim.

On April 8, 2008, Plaintiff, through counsel, presented a full and final settlement offer of $25,000, which Defendant rejected. Defendant countered with an offer of $1,200 which was similarly rejected by Plaintiff. Wolfe then filed suit seeking compensatory as well as punitive damages for his injury. Although Wolfe continued to pursue a settlement for less than $25,000, Allstate indicated that it would not deviate from its initial offer. Had Defendant settled the case, Plaintiff would have signed a release that would have shielded Zierle from any personal liability, including punitive damages. Zierle told his attorneys that he wanted the case settled so that he was insulated and protected from personal liability. Zierle's attorneys recommended to Allstate that the settlement offer be increased in an attempt to settle the case, rather than expose Zierle to personal liability. However, no increased settlement amount was offered, although authority was given for a $1,400 offer if Plaintiff moved off of his $25,000 figure.

3

A0024

The case proceeded to trial on September 28, 2009. The jury returned a
verdict for Plaintiff, in the amounts of $15,000 for compensatory damages and
$50,000 for punitive damages. Although Allstate indemnified Zierle from the
compensatory damages, Zierle incurred the personal obligation to pay the punitive
damages as they were beyond the scope of the Policy's coverage. As a result, on
March 12, 2010, Zierle assigned to Wolfe any and all rights, claims and causes of
action arising out of Allstate's failure to properly defend, protect and indemnify
Zierle.

Thereafter, Wolfe filed suit against Allstate alleging that Defendant: (1)
acted in bad faith in insuring Zierle pursuant to 42 PA. STAT. ANN. § 8371(Count
I); (2) violated Pennsylvania's Unfair Trade Practices and Consumer Protection
Law pursuant to 73 PA. STAT. ANN. § 201-1 *et seq* (Count II); and (3) breached its
contract with the insured (Count III).

## IV.   DISCUSSION

As noted above, Magistrate Judge Methvin recommends that we deny the
Defendant's Motion for Summary Judgment. With respect to Plaintiff's bad faith
claim, she specifically finds that Allstate had a fiduciary duty to negotiate a
settlement in good faith on behalf of Zierle, and that Allstate's own attorney urged
the adjuster to authorize a greater settlement amount, but he refused to do so, over

4

a period of years. Magistrate Judge Methvin concludes that, viewing the facts in

the light most favorable to the nonmoving party, Wolfe has made a sufficient

showing that a reasonable jury could find that Allstate acted with reckless

unreasonableness during the settlement negotiations, amounting to bad faith. We

agree.

It is undisputed that from the inception of Wolfe's claim up until trial,

Allstate refused to increase its $1,200 settlement offer. Allstate refused to move

from this number even after the following developments: (1) Wolfe's attorney

presented Allstate with information about Wolfe's injuries; (2) Wolfe filed a

lawsuit against Zierle; (3) a punitive damages claim was added to the lawsuit; (4)

Allstate's own lawyer told the adjuster that he believed Wolfe's $25,000 settlement

demand would decrease if Allstate made a higher counter-offer, based on his prior

dealings with Wolfe's attorney; (5) the trial judge granted a motion in limine

permitting Wolfe to present evidence about Zierle's three prior DUI arrests and/or

convictions.; (6) the trial judge suggested $7,500 to settle the case and a settlement

officer suggested a similar amount; and (7) Allstate's lawyer told its adjuster that he

had "concerns about this case" and believed they should "be re-evaluating this

matter." We agree with Magistrate Judge Methvin that, in view of this record

5

evidence, it would be inappropriate to grant summary judgment in favor of Allstate on Plaintiff's bad faith claim.

We further agree with Magistrate Judge Methvin that summary judgment is also inappropriate on Plaintiff's UTPCPL and breach of contract claims. In practical effect, a claim under the UTPCPL has the same basis as does a bad faith claim, thus based on the foregoing analysis on Plaintiff's bad faith claim, we shall deny summary judgment on Plaintiff's UTPCPL claim. Further, based on the record evidence discussed above, Plaintiff's breach of contract claim survives summary judgment because a reasonable jury could conclude that Allstate breached its contract with Zierle by failing to discharge its contractual duties in good faith.

Accordingly, based on all of the foregoing, we shall adopt the Magistrate Judge's R&R in its entirety and deny the Defendant's summary judgment motion. Further, we shall require the parties to stipulate to a trial term within twenty (20) days of the date of this Order.[3]

**NOW, THEREFORE IT IS HEREBY ORDERED THAT:**

---

[3] A copy of the Court's trial calendar is attached for the parties' convenience.

6

1.    The Report and Recommendation of Magistrate Judge Methvin (Doc.

      56) is **ADOPTED** in its entirety.

2.    The Defendant's Motion for Summary Judgment (Doc. 35) is

      **DENIED**.

3.    The parties shall file a stipulation to a trial term within twenty (20)

      days of the date of this Order.

                                        s/ John E. Jones III
                                        John E. Jones III
                                        United Stated District Judge

7

**Judge Jones**
**2012 Court Calendar**

|           | PreTrial Conference | Jury Selection |
|-----------|---------------------|----------------|
| June      | 5/1/12              | 6/4/12         |
| July      | 6/1/12              | 7/5/12         |
| August    | 7/2/12              | 8/2/12         |
| September | 8/1/12              | 9/5/12         |
| October   | 9/4/12              | 10/2/12        |
| November  | 10/1/12             | 11/2/12        |
| December  | 11/1/12             | 12/5/12        |

8

A0029

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JARED WOLFE,** | : | **NO.: 4-10-cv-00800** |
| **Plaintiff** | : | |
| | : | **JUDGE JONES** |
| **v.** | : | |
| | : | **MAGISTRATE JUDGE METHVIN** |
| **ALLSTATE PROPERTY AND** | : | |
| **CASUALTY INSURANCE** | : | |
| **COMPANY,** | : | |
| **Defendant** | : | |

---

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### (Doc. 35)

In the early hours of March 2, 2007, an inebriated Karl Zierle rear-ended Jared Wolfe,

causing Wolfe injury. After early settlement negotiations failed between Wolfe and

Allstate Property and Casualty Insurance Company, Zierle's insurer, Wolfe filed suit in

the Court of Common Pleas of Lycoming County, Pennsylvania. After Zierle's

deposition, in which he could not remember where he was the night before the accident,

ostensibly due to his inebriation, Wolfe's attorney amended the complaint to add a claim

for punitive damages. The trial judge unsuccessfully attempted to broker a settlement. At

trial, a jury awarded Wolfe $15,000 in compensatory and $50,000 in punitive damages.

Allstate paid the $15,000 award, but denied coverage of the punitive damage award.

Zierle, with an unsatisfied $50,000 judgment against him, assigned to Wolfe all rights he

had against Allstate for failure to settle within the policy limits.

2

Wolfe sued Allstate in Lycoming County Court, and Allstate removed the case to this court based upon diversity jurisdiction. Wolfe's amended complaint contains three counts: Count I alleges that Allstate conducted settlement negotiations in bad faith, violating 42 Pa. Cons. Stat. Ann. § 8371; Count II alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§ 201-1 to 201-9.3 (UTPCPL); and Count III alleges breach of the insurance contract between Allstate and Zierle. Wolfe seeks a judgment requiring Allstate to pay him the $50,000 in punitive damages plus interest, attorney's fees, and costs.

After discovery was completed, Allstate filed a motion for summary judgment on all counts.[1] The motion has been referred to the undersigned magistrate judge for a report and recommendation and is now ripe for adjudication.[2]

---

[1] Doc. 35.

[2] Wolfe initiated this case in March 2010 by filing a complaint in the Court of Common Pleas, Lycoming County, Pennsylvania. (Notice of Removal ¶ 1, Doc. 1, at 2). The next month, Allstate removed the case to the Middle District of Pennsylvania on the basis of diversity jurisdiction. (*Id.* ¶ 3.) Allstate moved to dismiss Count II (Doc. 7), which the Court granted in June 2010 (Doc. 14). Wolfe filed an amended complaint (Doc. 16) on July 2, 2010 and Allstate filed another motion to dismiss Count II (Doc. 21). The motion was denied following a Report and Recommendation by Magistrate Judge Prince (Doc. 25) that the Court adopted in full on January 10, 2011 (Doc. 28.) After discovery, Allstate moved for summary judgment on July 1, 2011. (Doc. 35.) Allstate also filed a brief in support (Doc. 35-1), statement of facts (Doc. 35-2), and 77 exhibits in support (Docs. 35-3 to 35-9). Wolfe filed an opposing brief (Doc. 39) and an answer to the statement of facts (Doc. 38), as well as ten supporting exhibits (Docs. 41–48). Allstate's reply brief (Doc. 49) included another eleven exhibits (Docs. 49-1 to 49-3). All filing deadlines have now passed.

3

### *Issues Presented*

The pending motion presents three issues for the Court's consideration:

1. As to Count I regarding bad faith, whether Wolfe has produced sufficient clear and convincing evidence that would allow a reasonable jury to find that Allstate lacked a reasonable basis for its valuation of Wolfe's claim during settlement negotiations.

2. As to Count II under the UTPCPL, whether (a) Zierle reasonably relied to his detriment on any misrepresentation by Allstate or (b) Allstate improperly evaluated Wolfe's claim.

3. As to Count III alleging breach of contract, whether Allstate breached any duty that it owed Zierle under his policy.

### *Findings and Conclusions*

#### I. Facts of the case

The facts as stated below are drawn from the record before the Court, with all inferences concerning the existence of a material dispute being made in favor of the nonmoving party, Wolfe, and all reasonable inferences based on the undisputed facts also being made in favor of Wolfe.

Around 4:00 AM on March 2, 2007, Zierle finished his 15th or 16th beer for the night and went to sleep. (Def's Stmt. of Undisputed Facts ¶ 1–2, Doc. 35-2 [hereinafter Def.'s Facts]; Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 1–2, Doc. 38 [hereinafter Pl.'s Facts].)[3] Seven hours later, Zierle was driving; at 11:00 AM, he rear-ended Wolfe. (Facts

---

[3] Whenever an undisputed fact finds support from both parties' statements of facts (Allstate's allegation and Wolfe's admission to it), citations will be to "Facts ¶ [x]," referring to the appropriate paragraphs in both Docs. 35-2 and 38.

4

¶ 3.) The police officer who attended the scene of the accident suspected that Zierle was

intoxicated and took him to Williamsport Hospital, where Zierle's blood-alcohol level

tested at 0.25%. (Facts ¶¶ 4–5.) Zierle had three prior DUI's. (Facts ¶ 6).

Sometime following the accident, Wolfe hired attorney Michael Dinges to represent

him in an attempt to recover damages allegedly resulting from bodily injury and economic

loss. (Facts ¶ 11.) Wolfe's own insurance policy restricted recovery in tort actions to

economic losses unless Wolfe had suffered serious bodily injury, but because Zierle

admitted being drunk at the time of the collision, this restriction did not apply. (Facts

¶¶ 7, 24–25.)

Zierle's insurance policy had a $50,000 limit of coverage for suits by third parties

concerning damages attributable to bodily injury. (Facts ¶ 9.) Zierle knew that his policy

did not cover punitive damages and that Allstate would not pay any punitive damages

awarded by a jury. (Facts ¶ 54) The policy gave Allstate the sole discretion to "settle any

claim or suit if [Allstate] believe[s] it is proper." (*Id.*, ¶ 10 (alterations in original).)

Following the accident, Wolfe had received treatment at the emergency room and had

two follow-up visits with his family doctor, and one regularly-scheduled appointment

with a neurosurgeon. (Facts, ¶ 17.) Wolfe had experienced cervical and shoulder

problems prior to the accident, and had undergone surgery to repair a problem at the C6

disc. (Facts ¶ 19-20.) MRIs taken both before and after the accident showed a disc bulge

at C5-C6, but no herniation. (Facts ¶ 18).

5

In early April 2008, Dinges wrote to Allstate's assigned adjustor, Kevin Broadhead,

offering to settle the case for $25,000. (Letter from Michael A. Dinges, Esq., Elion,

Wayne, Grieco, Carlucci, Shipman & Irwin, P.C., to Kevin Broadhead, Allstate Prop. &

Cas. Ins. Co.,[4] (Apr. 8, 2008), Pl.'s Exh. J, Doc. 35-4, at 2, 5.) Dinges supported the

$25,000 demand with information about Wolfe's medical treatment, medical expenses,

pain and suffering, and wage loss following the collision.[5] (Id. at 2–4.)

Broadhead responded with a counteroffer of $1200. (Letter from Kevin Broadhead to

Elion Wayne (Apr. 30, 2008), Def.'s Exh. Q, Doc. 35-5, at 14). He stated that in the

absence of "supporting medical or wage documentation," he would not include any

amount for wage loss. Dinges rejected the $1200 offer, and neither attorney thereafter

---

[4] Future references to Kevin Broadhead in citations as an author or recipient of written
communications will be made with the shorthand "Kevin Broadhead," leaving it implicit
that he acted at all relevant times as an adjuster for Allstate.

[5] Dinges never budged from this $25,000 demand, even though he recognized that
Wolfe's claim for compensatory damages was worth less than the $50,000 policy limit,
had no expectation to settle for case for $25,000, and merely considered $25,000 a
reasonable starting point. (Facts ¶¶ 13–14, 63, 66, 67, 78, 83; Dinges Dep. 32:13–23, May
13, 2011, Def.'s Exh. K, Doc. 35-4, at 6, 14 (never reduced demand); id. 8:22–9:2, Doc.
35-4, at 8 ("not a policy-limits case"; $25,000 was a reasonable starting demand); id.
36:4–5, Doc. 35-4, at 15 ("Obviously we didn't think that we were going to settle the case
for $25,000."); see also id. 57:2–9, Doc. 35-4, at 16 (Dinges considered settlement
negotiations to require back-and-forth bargaining).) In fact, Wolfe was willing to settle
the case for $7,500, but never communicated this willingness to Allstate. (Facts ¶ 69.) See
also Dinges Dep. 33:22–34:2, Pl.'s Exh. 5, Doc. 44, at 33–34 (Dinges told Judge Gray
that $7500 would settle the case); Penn Dep. 7:12–25, May 23, 2011, Pl.'s Exh. 7, Doc.
46, at 7 (Rebecca Penn, cocounsel for Allstate, heard Judge Gray tell Gary Weber, also
cocounsel for Allstate, that $7500 would settle the case).

6

changed his offer. (Facts ¶¶ 29, 31; Dinges Dep. 32:13–23 (May 13, 2011), Def.'s Exh.

K, Doc. 35-4, at 14.)

Shortly thereafter, Broadhead wrote to Zierle to let him know that Wolfe might soon

be filing suit against him. (Letter from Kevin Broadhead to Karl Zierle (May 8, 2008),

Def.'s Exh. V, Doc. 35-5, at 44.) Indeed, on June 11, 2008, Wolfe initiated the action

underlying the case at bar by filing a complaint against Zierle in the Court of Common

Pleas of Lycoming County, Pennsylvania. (Facts ¶ 35.) On June 23, Broadhead again

wrote to Zierle, informing him that the complaint was filed and that the firm Mitchell,

Mitchell Gray & Gallagher had been retained by Allstate as Zierle's defense counsel.

(Letter from Kevin Broadhead to Karl Zierle (June 23, 2008), Def.'s Exh. X, Doc. 35-5,

at 55.) The June 23 letter told Zierle that "the suit papers do not indicate the extent of

damages" that Wolfe was claiming, which left open the possibility that the damages "may

be in excess of the [$50,000] protection afforded" by Zierle's policy with Allstate. (*Id.*) If

the verdict did exceed the policy limit, Broadhead's letter warned, Zierle would be

personally liable for the excess. (*Id.*) Broadhead's letter further advised Zierle that he had

the option of hiring an attorney at his own expense to "cooperate with" the firm that

Allstate had retained.[6] (*Id.*) Allstate retained attorneys Gary Weber and Rebecca Penn to

handle Zierle's defense. (Facts ¶ 37.)

---

[6] Zierle did eventually hire his own counsel, Attorney Gregory Drab (Facts ¶ 40), but the
record does not indicate he was actively involved in the case.

7

By December 3, 2008, depositions in the underlying action were complete, as reported

in a letter from Dinges to Weber. (Letter from Michael A. Dinges, Esq., Elion Wayne, to

Gary L. Weber, Esq., Mitchell Gallagher (Dec. 3, 2008), Def.'s Exh. AA, Doc. 35-6, at

2.) Dinges remarked to Weber that Zierle "is clearly liable for the accident" and described

him as "not the most [sympathetic] defendant." (*Id.*) He contrasted Zierle with Wolfe,

who he said "represented as a creditable witness," and noted that Wolfe was off work for

two months after the accident and—at the time the letter was written, a year and a half

after the accident—"still experiences pain as a result of the accident." (*Id.*) Dinges closed

the letter with an acknowledgment "that the specials are not extremely great" but

reiterated his $25,000 settlement demand. (*Id.*) He asked that Weber contact him "so that

we may discuss resolving this case." (*Id.*)

Following Zierle's deposition, Dinges moved to add a punitive damages claim to the

complaint in order to increase the potential judgment at trial. (Facts ¶¶ 45, 50; Motion for

Leave of Court to Amend Complaint Pursuant to Pa. C.S.A. 1003, *Wolfe v. Zierle*, No.

08-1217 (Pa. Ct. Com. Pl. Jan. 27, 2009), Def.'s Exh. B, Doc. 35-3, at 9, 9–11.)

According to Dinges, Zierle's deposition testimony "showed how drunk he really was"

(*Id.* ¶ 47). Judge Gray, the presiding judge, granted the motion March 4, 2009, over

opposition from Zierle's counsel. (Answer to Motion for Leave of Court to Amend

Complaint, *Wolfe v. Zierle* (Feb. 9, 2009), Def.'s Exh. C, Doc. 35-3, at 13; Letter from

Gary L. Weber, Mitchell Gallagher, to Karl Zierle (Feb. 9, 2009), Def's. Exh. DD, Doc.

8

35-6, at 8 (informing Zierle that he had opposed Wolfe's motion to amend and telling

Zierle that he would let him know how the judge ruled); Order, *Wolfe v. Zierle* (Mar. 4,

2009), Def.'s Exh. BB, Doc. 35-6, at 4 (granting, by order of Judge Richard A. Gray,

Wolfe's motion to amend a claim for punitive damages to the complaint in the underlying

action).)

Meanwhile, the various persons involved with Zierle's defense were communicating

with each other. On January 28, 2009, the day after Dinges moved to amend the

complaint, Weber wrote to Broadhead. Although this letter made passing reference to the

motion to add punitive damages ("Based on the DUI," wrote Weber, "he is probably

within his right to do that"), its focus was Weber's review of Wolfe's medical history.

(Letter from Gary L. Weber, Mitchell Gallagher, to Kevin Broadhead (Jan. 28, 2009),

Def.'s Exh. O, Doc. 35-5, at 8.) In reviewing Wolfe's medical records, Weber noted "a

very interesting pattern of cervical and shoulder problems going back to 2003–2004,"

including disc degeneration in the L6–L7 and L5–L6 regions and what were alternatively

referred to as "herniations" and "bulges." (*Id.*) Weber reported that the doctor who

reviewed Wolfe's first MRI after the accident "noted no change from previous results."

(*Id.*) Weber concluded, "There really does not seem to be any objective evidence of a

change in [Wolfe's] neck or shoulder that is related to the accident." (*Id.*) The record does

not reveal any further discussion between Weber and Broadhead about Wolfe's medical

history or the injuries that Wolfe claimed the accident caused.

9

A few days later, in early February 2009, Broadhead wrote to Zierle to let him know about the "potential for punitive damages" stemming from his DUI and to remind him that such damages "are not covered under the liability policy." (Letter from Kevin Broadhead to Karl Zierle (Feb. 2, 2009), Def.'s Exh. CC, Doc. 35-6, at 6.) "This is to say," continued Broadhead, "that if a verdict was rendered against you for a sum under any punitive damage claim, we would not pay this portion of the verdict and you would be held accountable for payment." (*Id.*)

Weber wrote to Zierle in mid-June 2009 to let him know that the case was scheduled for trial sometime in September or October 2009, with jury selection in early September. (Letter from Gary L. Weber, Mitchell Gallagher, to Karl Zierle (June 17, 2009), Def.'s Exh. FF, Doc. 35-6, at 19.) Weber remarked that the pretrial conference, scheduled for August 17, 2009, would give him a "better idea of whether the case will go forward or whether it will be settled." (*Id.*) He assured Zierle that Allstate was "looking at [the] case" to valuate Wolfe's claimed injuries. (*Id.*) "I would expect a settlement offer will be made," wrote Weber, "although I do not know whether it will be sufficient to settle the case." (*Id.*)

Dinges wrote to Weber not long after, noting that the pretrial conference had been scheduled. (Michael A. Dinges, Esq., Elion Wayne, to Gary L. Weber, Esq., Mitchell Gallagher (June 23, 2009), Def.'s Exh. GG, Doc. 35-6, at 21.) He asked Weber to contact him "regarding your client's position on settlement," reminding him that Wolfe's $25,000

10

demand remained standing and that Allstate had yet to change its $1200 offer, which it

had made in May 2008. (*Id.*) Dinges made it clear that the $1200 offer was insufficient to

avoid trial: "In light of the circumstance of this case[,] my client has very little incentive

to settle" for that amount, he wrote. (*Id.*) He asked Weber to review the matter with

Allstate and get back to him. (*Id.*)

Weber sent a letter to Broadhead stating that "Dinges . . . wishes to discuss settlement

here." (Letter from Gary L. Weber, Mitchell Gallagher, to Kevin Broadhead (June 29,

2009), Def.'s Exh. HH, Doc. 35-6, at 23.) "When you have had a chance to evaluate the

new information I forwarded to you," Weber asked Broadhead, "please let me know how

you wish to proceed here." (*Id.*)

The record contains scant evidence of further communication between Weber and

Broadhead before the pretrial conference. Weber's time sheet, logging hours spent on the

underlying case, notes that Weber spoke with Broadhead over the phone on July 10.

(Gary L. Weber, *Wolfe v. Zierle*, Files > Facts > Time Spent > All File Time (n.d), Def.'s

Exh. EE, Doc. 35-6, at 10, 14.) According to this time sheet, Broadhead reported calling

Dinges but not hearing back from him, and that although he considered the $25,000

demand much too high, Broadhead "will talk" if Dinges "comes down." (*Id.*) Weber's

notes suggested that Broadhead was authorized to raise the settlement offer as high as

$1400. (*See id.* (remarking "now, have $1200 with $200 in our pocket").)

11

Weber sent Broadhead an email on August 16, the day before the pretrial conference asking, "Anything new?", apparently referring to settlement authority. Weber reminded Broadhead that when they last spoke, Broadhead had yet to hear back from Dinges and that he had "$1200 offered with additional $200 in authority." (Email from Gary Weber, Mitchell Gallagher, to Kevin Broadhead (Aug. 16, 2009, 4:51 PM), Def.'s Exh. JJ, Doc. 35-6, at 26.)

Broadhead responded the next morning to say that he was available for the pretrial conference if needed. (Email from Kevin Broadhead to Gary Weber (Aug. 17, 2009, 7:49 AM), Def.'s Exh. JJ, Doc. 35-6, at 26.) He said that Dinges had never gotten back to him. "Let's stick with the $1200.00 offer at this point," Broadhead told Weber. (*Id.*) "I would prefer not to offer the $1400, unless it will settle it." Allstate's records contain a notation Broadhead made following the pretrial conference, indicating he did not intend to increase his $1200 offer unless Dinges reduced his $25,000 demand:

> Attorney Dinges has not moved off his $25K demand on this claim. We have maintained the $1200 offer. Dinges is claiming that his client had $6K in wage loss (3 months) yet [Wolfe's] tax returns for that year were for . . . $5100 total.
> . . . . Gary [Weber] is concerned about the DUI, but we agree that the damages in this case are unproven and minimal.

(Kevin L. Broadhead, Involved Person Statement (Aug. 17, 2009), Def.'s Exh. KK, Doc. 35-6, at 28.)

A0040

12

The case proceeded to jury selection on September 3, 2009. (Facts ¶ 77.) That same

day, Dinges filed a motion in limine that sought permission to present evidence at trial

about Zierle's three prior DUI arrests and/or convictions.[7] (Motion in Limine, *Wolfe v.*

*Zierle* (Feb. 3, 2009), Def.'s Exh. E, Doc. 35-3, at 26.)

Weber wrote to Broadhead on September 4 to apprise him of the previous day's

developments. He expressed his surprise that he was unable to find a *per se* rule against

admission of old DUI convictions. (Email from Gary Weber, Mitchell Gallagher, to

Kevin Broadhead (Sept. 4, 2009, 11:14 AM), Def.'s Exh. MM, Doc. 35-6, at 33.) Noting

that Dinges claimed that the old DUIs could be admissible to prove punitive damages,

Weber surmised that Dinges sought to use the DUIs as character evidence. Weber was

doubtful that the old DUIs would be admissible, but realized the impact their admission

into evidence would likely have on a verdict against Zierle, and again urged Broadhead to

make a new, larger settlement offer:

> . . . [C]ertainly 3 prior convictions will be prejudicial. However, if it is
> admissible, then we are stuck with the prejudice. If the old convictions get
> in, I think Zierle will be hit hard by the jury.
>
> Judge Anderson suggested $7500 to settle the case. Judge Gray
> suggested a similar number in the pre-trial conference. Don't know if
> Dinges will take it as he is very focused on the punitive damage issue.
>
> . . . .

---

[7] The record shows Zierle was arrested for DUI in 1987, 1989, and 1993. He completed
an ARD program as to the first arrest, plead guilty to disorderly conduct as to the second,
and plead guilty to DUI as to the third. (Doc. 35-3, at 26.).

13

> .... I have seen no indication that Dinges is going to modify his
> demand to try to settle—frankly, that is his style. If any move to settlement
> is to be made, we need to do it.
>
> Please advise.

(*Id.*)

Broadhead's file note of September 4 indicates he spoke to Weber by telephone after

receiving his email. Weber "does have some concerns about this case," Broadhead

reported, "and he believes we should be re-evaluating this matter." (Kevin L. Broadhead,

Involved Person Statement (Sept. 4, 2009), Def.'s Exh. LL, Doc. 35-6, at 28.)

The record shows that during this phone conversation, Weber counseled Broadhead to

"make[] a move to settle," advising him that in previous Allstate cases Weber had had

with Dinges as opposing counsel, Dinges had settled the cases when movement was made

by Allstate. Broadhead discounted Weber's concerns, despite being aware of the harm

that the prior DUI evidence could have on a verdict against Zierle:

> I advised that in [reevaluating Allstate's settlement position] we are bidding
> against ourselves as we have made an initial offer, and plaintiff is
> maintaining his $25K demand. He has shown no willingness to negotiate
> this claim, and we have very minimal damages here, with a $50K policy.
> Gary [Weber] states that this is Attorney Dinges' style in that he maintains
> his demands, but he has had prior cases with him in which he was able to
> settle when movement was made by Allstate. Gary believes that we should
> be making a move to settle. Advised Gary that at this point, we will be
> maintaining our initial offer, as I do not see a reason to request further
> authority.

14

(*Id.*) Broadhead concluded the IPS with a remark that Dinges still had not responded to his contact attempts. (*Id.*)

A week later, Broadhead made note of a conversation he had with Zierle. (Kevin L. Broadhead, Involved Person Statement (Sept. 11, 2009), Def.'s Exh. OO, Doc. 35-6, at 37.) Zierle, knowing that the trial date loomed, had called Broadhead to ask if Allstate had made any further settlement offers. (*Id.*) Broadhead "explained [Allstate's] position and the offer that has been made" (*Id.*).

The case went to trial on September 28, 2009, and the next day the jury awarded Wolfe $15,000 in compensatory damages and $50,000 in punitives. According to an IPS by Broadhead made the next day, Weber was "stunned" by the amount of the punitive award, "but not on the size of the compensatory." (Kevin L. Broadhead, Involved Person Statement (Sept. 29, 2009), Def.'s Exh. QQ, Doc. 35-6, at 37.)

Allstate promptly paid Wolfe the $15,000 compensatory award, but not the punitive award. (Facts ¶¶ 81, 82, 84.) Allstate continued to fund Zierle's defense. (Facts ¶ 85.) Broadhead told Weber to do "whatever he feels is necessary to defend [Zierle] including filing post trial motions." (*Id.*; Kevin L. Broadhead, Involved Person Statement (Sept. 29, 2009), Def.'s Exh. QQ, Doc. 35-6, at 37.) Indeed, in early October 2009, Weber and Penn filed a post-trial motion on Zierle's behalf arguing that the punitive-damage award should be reduced. The motion was denied. (Facts ¶ 86.) In March 2010, Zierle assigned to Wolfe all of his rights against Allstate. (Facts ¶ 89.)

15

## II. Standard of review

Rule 56(a) of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).[8] A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325.

If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" and do more than "simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

---

[8] The language of Rule 56 was revised by amendment effective December 1, 2010. However, "[t]he standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed.R.Civ.P. 56 advisory committee's note to 2010 Amendments.

16

The nonmoving party cannot rely upon unsupported allegations in the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Further, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

The Court must view the facts in a light most favorable to the nonmoving party, and the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). *See also Anderson*, 477 U.S. at 242. Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the court weigh the evidence. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

17

## III. Discussion

### (A) Bad faith under 42 Pa. Cons. Stat. Ann. § 8371

Under Pennsylvania law, insureds who successfully claim that their insurers have acted in bad faith toward them are entitled to interest on their claim, an award of punitive damages, and court costs and attorneys fees. 42 Pa. Cons. Stat. Ann. § 8371. The majority of bad-faith cases under § 8371 "deal with extremes." *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997) (citing *Terletsky v. Prudential Prop & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. 1994); *Kauffman v. Aetna Cas. & Sur. Co.*, 749 F. Supp. 137, 141 (E.D. Pa. 1992)). The *Jung* court noted that a "frivolous denial[]" of coverage is "clearly actionable," but "an aggressive defense of the insurer's interest is not bad faith." *Id.*

Allstate devotes much of its brief to the argument that it did not need to consider the punitive damage claim when making its settlement offer. (*See* Def's Br. in Supp. of Mot. for Summ. J. 8–15, Doc. 35-1, at 13–20 [hereinafter Allstate's Brief in Support] (arguing generally against insurability of punitive-damage awards). Allstate is correct that punitive damages are uninsurable. *See, e.g.*, *Esmond v. Liscio*, 224 A.2d 793, 799 (Pa. Super. 1966) ([P]ublic policy does not permit a tortfeasor . . . to shift the burden of punitive damages to his insurer.")

Wolfe's claim, however, is that Allstate acted in bad faith in its conduct of settlement negotiations as to the *compensatory claim* against Zierle. (*See* Pl.'s Br. in Opp. to Mot.

18

for Summ. J. 3–4, Doc. 39, at 3–4 [hereinafter Wolfe's Brief in Opposition] (construing

Wolfe's bad-faith claim)).

In order to succeed on a bad faith claim under § 8371, a plaintiff must show more than

negligence or poor judgment.

> "Bad faith" on [the] part of [an] insurer is any frivolous or unfounded
> refusal to pay proceeds of a policy; it is not necessary that such refusal be
> fraudulent. For purposes of an action against an insurer for failure to pay a
> claim, such conduct imports a dishonest purpose and means a breach of a
> known duty (*i.e.*, good faith and fair dealing), through some motive of self-
> interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (emphasis added) (citations omitted) (quoting BLACK'S LAW

DICTIONARY 139 (6th ed. 1990); *accord Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.2d 121,

137 (3d Cir. 2005) (adopting the same passage from BLACK'S as the definition of "bad

faith" under Pennsylvania law)).

A plaintiff must prove bad faith by "clear and convincing evidence." *Am. Franklin

Life Ins. Co. v. Galati*, 776 F. Supp. 1054, 1064 (E.D. Pa. 1991) (citing *U.S. Fire Ins. Co.

v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir. 1985), *Hall v. Brown*, 526 A.2d 413, 416

(Pa. Super. 1987), and *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 223 (Pa. 1957)).

Under this clear-and-convincing standard, the plaintiff must show that the defendant

"knew or recklessly disregarded its lack of reasonable basis" in undertaking the course of

conduct that it did. *See Galati*, 776 F. Supp. at 1064 (essentially requiring, when

19

plaintiff's claim involves a denial of benefits due under the plaintiff's insurance policy, proof of the insurer's recklessly unreasonable behavior in denying the claim).

"Clear and convincing" evidence is "so clear, direct, weighty[,] and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Grp., Inc.*, 56 F.Supp.2d 580, 587 (E.D. Pa. 1999) (citing *Stafford v. Reed*, 70 A.2d 345, 348 (Pa. 1950), and ANNE POULIN & LEONARD PACKEL, PENNSYLVANIA EVIDENCE § 303.2 (West Pub. Co. 1987)).

Even though, at this stage, inferences and interpretations of evidence favor the plaintiff, "the insured's burden in opposing a summary judgment motion brought by the insurer 'is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)); *accord Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137.

Summary judgment is appropriate where the court finds that *no reasonable jury* could find by clear and convincing evidence that the insurer negotiated in reckless disregard and without a reasonable basis. *Bostick*, 56 F.Supp.2d at 587 (citations omitted). Alternatively, a defendant may prevail at the summary-judgment stage "by affirmatively demonstrating a reasonable basis for its actions." *Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 n.3 (E.D. Pa. 1998). *See also id.* (citing *Jung*, 949 F.Supp. at 353, *Dearry v. Liberty Mut. Ins. Co.*, No. 95-6569, 1997 WL 129099 (E.D. Pa. Mar. 17, 1997),

20

and *Leo v. State Farm Mut. Auto. Ins. Co.*, 939 F. Supp. 1186 (E.D. Pa.1996)) (noting that

bad-faith cases "are commonly decided at [this] stage" of the proceedings on the basis of

a finding, as a matter of law, that the insurer acted reasonably).

Summary judgment is not appropriate if a plaintiff can show that a reasonable jury

"could find by 'the stringent level of clear and convincing evidence' that the insurer

lacked a reasonable basis for its handling of the claim and that it recklessly disregarded is

unreasonableness." *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 571 (E.D. Pa.

2000) (citation omitted) (quoting *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp.

353, 356 (E.D. Pa.1997)).

Allstate bases much of its argument on the asserted unreasonableness of Dinges

settlement offer of $25,000, and points to evidence in the record that no one believed the

judgment value of Wolfe's case was $25,000. In fact, evidence in the record indicates that

the case might have settled for $7500 if either Dinges or Broadhead had offered to settle

for this amount. Weber testified he believed this was an appropriate amount, and that two

presiding judges had also suggested that amount (Judge Gray and Judge Anderson).

The record is clear, however, that a game of brinksmanship was being played by

Dinges on the one hand, and Allstate's adjustor, Broadhead, on the other. Dinges did not

move from his initial demand of $25,000, and despite urging from his own attorney,

Allstate's adjustor refused to authorize any settlement offer above $1200. As the record

21

shows, the jury verdict of $15,000 compensatory damages was much closer to Dinges'
offer than Allstate's.

Wolfe contends that Allstate's bad-faith conduct is supported by clear and convincing
evidence (Wolfe's Brief in Opposition 5–7, Doc. 39, at 5–7.) First, Allstate "fail[ed] to
properly investigate the injury," evidenced in part by Allstate's decision not to have an
independent medical examination. Because of this decision, Allstate had no expert at trial
to counter the testimony of plaintiff's treating doctor, Dr. Longenbach. At trial, Dr.
Longenbach testified that, although MRIs both before and after the accident showed a
bulge at C5–C6, a bulge at C6–C7 was caused by the accident. (Facts ¶ 18; MRI results
for Jared Wolfe dated January 30, 2006, February 25, 2006, and May 17, 2006, Def.'s
Exh. N, Doc. 35-5, at 7, 5, 4; Broadhead Dep. 104:8–105:5, March 23, 2010, Pl.'s Exh. 3,
Doc. 42-2, at 4–5 (reading into the record an overview of Dr. Longenbach's trial
testimony as described in a letter from Weber to Broadhead).)

Because Allstate's adjustor concluded that Wolfe's injuries predated the accident,
(Broadhead Dep. 13–22, Def.'s Exh. L, Doc. 35-4, at 25), Allstate made a "strategic
decision" not to have an independent medical examination of Wolfe, even though it left
Dr. Longenbach's testimony about causation uncontroverted at trial. (Weber Dep. 33:2–9,
Def.'s Exh. U, Doc. 35-5, at 33; Broadhead Dep. 107:8–13, Pl.'s Exh. 3, Doc. 42-2, at 7.)
Broadhead in fact admitted at his deposition that having an IME by a doctor who could
contradict Dr. Longenbach's causation testimony would "possibly" have been "helpful."

22

(Broadhead Dep. 109:16–22 (Mar. 23, 2010), Pl.'s Exh. 3, Doc. 42-2, at 9. Weber's

testimony indicates that he had expected to get additional settlement authority from

Broadhead after Weber took Dr. Longenbach's deposition. *See* Weber Dep. 30:18–31:1

(May 23, 2011), Pl.'s Exh. 6, Doc. 45, at 30–31 ("I thought that Dr. Longenbach's

deposition would have affected the value of the case.").)

Second, the addition of the punitive damage claim raised the likelihood of an

increased compensatory verdict. Allstate's attorney, Weber, was aware of this fact, and

the record shows this informed his efforts to obtain increased authority from Broadhead.

Weber testified regarding his awareness that the punitive damage claim meant "alcohol

could get into the case," and the jury might hear evidence that Zierle was drunk and had

several prior DUIs, which could increase the verdict. (*See* Weber Dep. 17:17–25, Pl.'s

Exh. 6, Doc. 45, at 17 (noting that evidence of alcohol is a "value driver" in an insurance

case).) Wolfe contends that Allstate's refusal to increase its settlement offer above $1200

shows clear and convincing evidence of bad faith and reckless disregard.

Finally, Wolfe lists a number of other factors that Allstate failed to consider (Wolfe's

Brief in Opposition 6, Doc. 39, at 6), most notably the $7500 valuation on the case that

both trial judges placed on the case, valuations that prompted no increase in Allstate's

settlement offer.

Viewing the evidence in the light most favorable to the nonmoving party, Wolfe has

made a sufficient showing that a reasonable jury *could find* that Allstate acted with

23

reckless unreasonableness during the settlement negotiations. *See Quaciari v. Allstate Ins. Co.*, 998 F.Supp. 578, 581 n.3 (E.D. Pa. 1998). While it is clear that both sides were playing a game of brinksmanship, Allstate had a fiduciary duty to negotiate in good faith on behalf of its insured, Zierle. Allstate's own attorney urged Broadhead, the adjustor, to authorize more than $1200, but he refused. Allstate's offer remained static for two years, despite developments in the case which made it look increasingly risky for Zierle. Weber pointed out his previous experience successfully settling cases with Dinges. This advice was disregarded. Weber told Broadhead that two judges had independently suggested that roughly $7500 would settle the case (*id.*). Dinges himself testified that $7500 would have settled the case (Facts ¶ 69) — but Broadhead refused to increase Weber's settlement authority.[9]

Weber warned Broadhead of the impact that evidence of alcohol use or prior DUIs could have on a verdict against Zierle: "Zierle will be hit hard by a jury." (Email from Gary Weber, Mitchell Gallagher, to Kevin Broadhead (Sept. 4, 2009, 11:14 AM), Def.'s Exh. MM, Doc. 35-6, at 33.) Broadhead knew that at trial, there was a significant risk that evidence of Zierle's previous DUI arrests and his 0.25 BAT at the time of the accident

---

[9] For a time, Broadhead had allowed Weber to offer as much as $1400, but the difference between that and the original $1200 offer is insignificant. Further, Broadhead decided to "stick with the $1200.00 offer." (Email from Kevin Broadhead to Gary Weber (Aug. 17, 2009, 7:49 AM), Def.'s Exh. JJ, Doc. 35-6, at 26.)

24

was likely to be placed before the jury due to the addition of a punitive damage claim.

Still, Allstate refused to move off its extremely low offer of $1200.

Broadhead testified in his deposition that the only reason he never allowed Weber to

offer more than $1200 was that Dinges never demanded less than $25,000:

> Q. . . . . [I]t looks to me like you're not moving off the $1200 [offer]
> because you want the plaintiff to move first, is that correct?
>
> A. No, we—we were provided with a demand, we made an offer and the
> next scope in that—the next step would have been a counterdemand
> so—and that didn't happen so—
>
> Q. . . . [Y]ou were waiting for this reduction in demand, correct?
>
> A. I was waiting for negotiation to take place.

(Broadhead Dep. 116:20–117:6 (Mar. 23, 2010), Pl.'s Exh. 3, Doc. 42-2, at 16–17.)

While Allstate argues it had no obligation to "bid against itself," a reasonable jury

could conclude that Broadhead's handling of the case was reckless and intended to edify

his own ego at the expense of Allstate's insured. While Wolfe's counsel is not excused

from his role in the settlement process—and his own intransigence in not moving from

his $25,000 demand— the sole issue presented here is whether there is sufficient

evidence of Allstate's bad faith to survive summary judgment given the enhanced

showing required. Considering the record as a whole, the undersigned concludes that

there is. A reasonable jury could conclude even "by 'the stringent level of clear and

convincing evidence' that [Allstate] lacked a reasonable basis for its handling of the claim

and that it recklessly disregarded its unreasonableness." *Williams v. Hartford Cas. Ins.*

25

*Co.*, 83 F. Supp. 2d 567, 571 (E.D. Pa. 2000) (citation omitted) (quoting *Jung v.*

*Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 356 (E.D. Pa.1997)).

It is therefore recommended that the court deny Allstate's motion for summary

judgment on Count I, Wolfe's bad-faith claim against Allstate.

### *(B) Reasonable detrimental reliance or improper evaluation under the UTPCPL*

In 1968, the Pennsylvania legislature passed "An Act prohibiting unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce, giving the Attorney General and District Attorneys certain powers and duties

and providing penalties." 1968 Pa. Laws 1224 (codified at 73 Pa. Cons. Stat. §§ 201-1 to

201-9.3 (1968)). Codified as the UTPCPL, this act is intended (as its title states) to

protect consumers from fraud and unfair or deceptive business practices. *Gardner v. State*

*Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008) (citing *Pirozzi v. Penske Olds-*

*Cadillac-GMC, Inc.*, 605 A.2d 373, 375 (Pa.Super.Ct.1992)).

There are two ways that plaintiffs may recover under the UTPCPL. First, plaintiffs

may show that they reasonably and detrimentally relied on a misrepresentation by a party

with whom such a plaintiff had conducted business. *Hunt v. U.S. Tobacco Co.*, 538 F.3d

217, 221–222 (3d Cir. 2008); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854

A.2d 425, 438–39 (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001); *Debbs v.*

*Chrysler Corp.*, 810 A.2d 137, 156–57 (Pa. Super. 2002); *Sexton v. PNC Bank*, 792 A.2d

26

602, 607 (Pa. Super. 2002)). Wolfe cannot recover under this theory because Zierle

admitted that Allstate never misled him in any way.

Second, a plaintiff–insured may recover by demonstrating that the plaintiff's insurer

commited malfeasance by improperly evaluating an insurance claim against the plaintiff.

*Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995); *Zaloga v.*

*Provident Life & Accident Ins. Co.*, 671 F. Supp. 2d 623, 632–33 (M.D. Pa. 2009) (Kosik,

J.); *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. 1988). In practical effect,

such a claim under the UTPCPL has the same basis as does a bad-faith claim under § 8371,

and as discussed above, a reasonable jury could find that Allstate recklessly disregarded

its lack of a reasonable basis for the way it handled the claim against its client, Zierle.

Accordingly, it is recommended that this Court deny Allstate's motion for summary

judgment on Count II, Wolfe's UTPCPL claims.

### (C) Breach of Contract

Pennsylvania law requires a plaintiff alleging a breach of contract to show "(1) the

existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract[,] and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053,

1058 (Pa. Super. 1999) (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d

1347, 1349 (Pa. Commw. 1976)).

As Wolfe's brief in opposition makes clear, his breach-of-contract claim is based upon

the survival of at least one of the other two claims: (1) Allstate's allegedly improper

27

evaluation of the compensatory-damages claim against Zierle and (2) Allstate's alleged

bad-faith conduct during negotiations. As discussed above, Wolfe has adduced evidence

that could allow a reasonable jury to conclude that Allstate acted in bad faith during

settlement negotiations in the underlying case, which indicates that a reasonable jury

could also conclude that Allstate breached its contract with Zierle by failing to discharge

its contractual duties in good faith. It is therefore recommended that this Court deny

Allstate's motion for summary judgment on Count III, which sets forth Wolfe's breach-

of-contract claim.

## IV. Conclusion

Based on the foregoing discussion, it is recommended that this Court DENY Allstate

Property & Casualty Insurance Company's motion for summary judgment in its entirety.

Signed on February 27, 2012.

MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JARED WOLFE,** | : | **NO.: 4-10-cv-00800** |
| **Plaintiff** | : | |
| | : | |
| | : | **JUDGE JONES** |
| **v.** | : | |
| | : | **MAGISTRATE JUDGE METHVIN** |
| **ALLSTATE PROPERTY AND** | : | |
| **CASUALTY INSURANCE** | : | |
| **COMPANY,** | : | |
| **Defendant** | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

Report and Recommendation dated February 27, 2012.

Any party may obtain a review of the Report and Recommendation pursuant to

Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within fourteen (14) days after
> being served with a copy thereof. Such party shall file with the clerk of
> court, and serve on the magistrate judge and all parties, written objections
> which shall specifically identify the portions of the proposed findings,
> recommendations or report to which objection is made and the basis for such
> objections. The briefing requirements set forth in Local Rule 72.2 shall apply.
> A judge shall make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection is made
> and may accept, reject, or modify, in whole or in part, the findings or
> recommendations made by the magistrate judge. The judge, however, need
> conduct a new hearing only in his or her discretion or where required by law,
> and may consider the record developed before the magistrate judge, making
> his or her own determination on the basis of that record. The judge may also
> receive further evidence, recall witnesses, or recommit the matter to the
> magistrate judge with instructions.

Signed on February 27, 2012.

MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE